■ UNITED SAFETY OF AMERICA, INC., Respondent, v CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Appellant, et al., Defendants. [623 NYS2d 591] —Order, Supreme Court, New York County (Herman Cahn, J.), entered September 16, 1993, which partially granted the motion by defendant Consolidated Edison ("Con Ed") for summary judgment, dismissing two of plaintiff's eight claims against said defendant, unanimously modified, on the law, summary judgment is granted on the remaining six causes of action as well, the complaint is dismissed as against Con Ed, Con Ed's derivative cross claims are dismissed as academic, and otherwise affirmed, without costs.

In 1987 Con Ed contracted with defendant NAB Construction Corporation for renovation of the former's Astoria Generating Station in Queens. A portion of the contract called for vacuum removal and disposal of fly ash (the waste residue of combusted fossil fuels) from two boiler units, at a set price of $140 per cubic yard.

Even though fly ash is considered a nonhazardous solid waste, under both the Environmental Protection Agency (EPA) (40 CFR 261.4 [b] [4]) and New York Department of Environmental Conservation (6 NYCRR 371.1 [e] [2] [iv]) regulations, Con Ed hired defendant Clayton Environmental Consultants to perform an industrial hygiene assessment of the chemical content and potential toxicity of the fly ash in order to determine the need and methodology for work and removal safeguards. Clayton issued its report in November 1988, noting the material's exemption from hazardous status under both Federal and State standards, but adding that the contents of the fly ash might still pose a problem. Certain metallic particulates in the fly ash, such as chromium and arsenic, were found to be at or in excess of levels which the EPA would otherwise characterize as hazardous. In other words, despite the hazardous-exempt status of the fly ash, disposal might still pose a problem of contamination for operators of dump sites concerned about future changes in environmental regulations.

Con Ed provided NAB with a copy of the Clayton Report in January 1989. NAB subcontracted with defendant Cleanco Industrial Services for removal of the fly ash. After reviewing the Clayton Report during bidding on the subcontract, Cleanco advised that disposal of the waste might prove challenging despite its hazardous-exempt status, and that the material might have to be transported a great distance for dumping. Recognizing this difficulty, Con Ed accepted NAB's proposed amendment to require disposal of the material as if it were hazardous waste, and increased the rate to $618.20 per cubic yard. Under the subcontract, Cleanco would be paid $562 per cubic yard for vacuum removal.

The fly ash was removed in February 1989. NAB and Con Ed decided that no hazardous waste manifest would be required for the trucks because of the classification of fly ash as nonhazardous waste. Con Ed paid a total of $325,482 on NAB's invoices in May. The following month, Con Ed learned for the first time that plaintiff, the company hired by Cleanco to haul the material to a dump site, had been unable to locate a site in New York State willing to accept it, and that "extraordinary means" would now be required to dispose of the waste, which was then still in storage. Plaintiff's counsel acknowledged the Clayton Report's designation of the material as nonhazardous, but indicated that potential dump sites nonetheless considered the material hazardous, a conclusion assertedly confirmed by plaintiff's own privately commissioned

tests which detected exceptionally high levels of cadmium and chromium in the waste. Con Ed's subsequent correspondence with NAB reveals the former's surprise that the material had not been disposed of by this time, and called upon NAB to resolve the matter. When NAB failed to do so, Con Ed contracted separately with plaintiff a year later to dispose of the fly ash at a hazardous waste landfill, at an additional cost of $260,000.

Plaintiff brought this action four months prior to the separate Con Ed disposal agreement. Claiming that it had been misled by the Clayton Report into taking on this disposal task at a nonhazardous rate of $75 per cubic yard, plaintiff alleged, as against Con Ed, fraud and misrepresentation resulting in $5 million in damage to its rolling stock and equipment for extended exposure to hazardous materials, consequential damage to its credit rating, exposure to potential criminal liability, punitive damages, negligent misrepresentation, breach of contract, and participation in a scheme to defraud. In addition, plaintiff sought rescission of the agreement, and a direction that Con Ed accept return of the fly ash.

With the dismissal of the claim for breach of contract, what essentially remains is a series of claims based upon alleged fraud or negligent misrepresentation. To establish the former, plaintiff must prove Con Ed's misrepresentation of a material fact to plaintiff, with knowledge, deception, and consequent injury *(Edison Stone Corp. v 42nd St. Dev. Corp.,* 145 AD2d 249, 257). Plaintiff concededly had no contact with Con Ed until months after entering into the hauling contract with Cleanco. Further, plaintiff's president admitted, during his deposition, that although he was given the 18-page Clayton Report 10 days prior to commencement of the job, he had read it only selectively before making his price proposal, focusing exclusively on the paragraph confirming the exemption of fly ash from hazardous waste regulation.

Plaintiff alleged that it was misled not only by this one paragraph of the Clayton Report, but also by the waste questionnaire on which Cleanco had indicated that the waste to be hauled was not considered hazardous under Federal regulations. Armed with its own copy of the full Clayton Report, which detailed the chemical content of the material to be hauled, plaintiff cannot claim it was misled. The IAS Court further erred in finding that plaintiff was misled by the absence of a hazardous waste manifest, because such a document was clearly not required in these circumstances.

A claim for negligent misrepresentation can only stand in

the presence of a special relationship of trust or confidence, which creates a duty for one party to impart correct information to another *(Delcor Labs. v Cosmair, Inc.,* 169 AD2d 639, *lv dismissed* 78 NY2d 952). A simple arm's length business relationship is not enough *(Andres v LeRoy Adventures,* 201 AD2d 262). Here, Con Ed did not learn of plaintiff's very existence until after it paid NAB for the work. Plaintiff seeks to furnish the missing link under the doctrine of agency, but there is no indication that Cleanco was acting as Con Ed's agent when it hired plaintiff. In short, there was *no* relationship between plaintiff and Con Ed, let alone a "special" one.

The absence of a fiduciary or confidential relationship between Con Ed and plaintiff is also fatal to the IAS Court's fashioning of a non-pleaded claim for constructive fraud. Con Ed did not "idly st[an]d by" as plaintiff's trucks carted off the waste "without the necessary documentation to facilitate its disposal." Not only did Con Ed act precisely within the letter of the law; it went far beyond its duty: It commissioned the Clayton assessment, it shared that report with those with whom it was in privity and apparently placed no restrictions on its dissemination to interested parties, it acceded to a 340% upward modification of the contract when informed that disposal might be more difficult than initially anticipated, it consulted with its contractor before jointly determining that a hazardous waste manifest was not required, it ordered the contractor to resolve the matter as soon as learning that the hauler was experiencing difficulty in disposing of the waste cargo, and it paid an additional $260,000 directly to the hauler when it learned that plaintiff had not obtained satisfaction from NAB. These are not the acts of a party availing itself of superior knowledge or expertise to mislead another by false representation *(see, Brown v Lockwood,* 76 AD2d 721, 734).

The unpublished Decision and Order of this Court entered herein on March 14, 1995 is hereby recalled and vacated. Concur—Ellerin, J. P., Wallach, Kupferman and Asch, JJ.