**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Plaintiff,**

v.

**HEATH FIELDING INSURANCE BROKING LTD., individually and as agent for Farex G.I.E. and American International Group, Inc.; Farex G.I.E. and Michael P. Kearney, Defendants.**

**No. 91 Civ. 0748(MJL).**

United States District Court, S.D. New York.

April 29, 1996.

---

Jonathan J. Lerner, Seth M. Schwartz, Susan Getzendanner and Thomas Kane, Skadden, Arps Slate, Meagher & Flom, New York City, Ted G. Semaya, Oppenheimer, Wolff & Donnelly, New York City, for Plaintiff.

Mark S. Fragner, Elliott M. Kroll, Kroll & Tract, New York City, for Defendants.

OPINION AND ORDER

LOWE, District Judge.

Before the Court is the motion of Plaintiff St. Paul Fire and Marine Insurance Company ("St. Paul"), pursuant to Rule 3(j) of the United States District Courts for the Southern and Eastern Districts of New York Joint Rules ("Local Rule 3(j)") and Federal Rule of Civil Procedure 59(e) ("Rule 59(e)"), to rear-

gue or to "clarify" issues decided by this Court's December 30, 1995 Opinion. Specifically, St. Paul moves to reargue the portion of the December 30, 1995 Opinion that grants summary judgment to Defendant Heath Fielding Insurance Broking Ltd. ("Heath") on St. Paul's negligent misrepresentation claim. Alternatively, St. Paul asks the Court to "clarify" the portion of the December 30, 1995 Opinion for which it seeks reargument. For the reasons discussed below, St. Paul's motion is denied.

## BACKGROUND

The facts and prior proceedings in this diversity action are fully set forth in the prior opinions of this Court. *See St. Paul Fire and Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd.,* 1993 WL 187778 (S.D.N.Y. May 25, 1993) ("May 1993 Opinion"); *St. Paul Fire and Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd.,* 1996 WL 19028 (S.D.N.Y. December 30, 1996) ("December 1995 Opinion"). The facts relevant to the instant motion are presented below.

St. Paul, a Minnesota corporation engaged in the insurance and reinsurance business, entered into a treaty retrocession contract ("Contract") with Farex G.I.E. ("Farex") and its constituent French insurance/reinsurance companies. Heath, a United Kingdom insurance broker, negotiated the Contract on Farex's behalf. The Heath brokers were Duncan Playford ("Playford") and John MacKensie–Green ("MacKensie–Green"). Defendant Michael P. Kearney ("Kearney"), previously employed as an insurance underwriter by an affiliate of St. Paul, accepted the Contract on St. Paul's behalf. The Contract bound St. Paul to pay losses on certain property risks insured by American International Group, Inc. ("AIG") and reinsured by Farex over a two-year period.

Two years after the execution of the Contract, Farex sought payment from St. Paul of approximately $40 million allegedly due under the Contract. Thereafter, St. Paul filed this action. St. Paul asserted fraud and negligence claims against Heath. With respect to the negligence claim, Count VI of the Original Complaint alleged, *inter alia,* that Heath (1) knew or should have known that Kearney acted without authority, (2) did not take proper steps to alert St. Paul, and (3) made material misrepresentations concerning the risks insured under the Contract. Original Complaint ¶¶ 59–68, 92–96. The Original Complaint further alleged that "[a] reinsurance broker owes a duty of care as a professional to all parties in the negotiation and placement of reinsurance and retrocession transactions." *Id.* ¶ 93.

Heath moved to dismiss the Original Complaint. The Court referred the motion to Magistrate Judge Barbara A. Lee pursuant to Federal Rule of Civil Procedure 636(b)(1)(B). The Magistrate Judge issued a Report and Recommendation dated November 15, 1991 ("November 1991 Report"). The November 1991 Report recommended dismissal of St. Paul's negligence claim because St. Paul "ha[d] not identified any source of duty that could give rise to a cause of action for negligence against Heath." November 1991 Report at 62–64. St. Paul never objected to this portion of the Magistrate Judge's report.

In its May 1993 Opinion, the Court addressed various objections to a number of the rulings of the Magistrate Judge. *St. Paul Fire and Marine Ins. Co.,* 1993 WL 187778, at *4–*8. As to the negligence claim asserted against Heath, the Court adopted the Magistrate Judge's recommendation, dismissing the claim with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* at *8. The Court granted St. Paul leave to amend its complaint against Heath to adequately allege fraud damages. *Id.*

In December 1993, St. Paul filed an amended complaint ("First Amended Complaint"). The First Amended Complaint expands St. Paul's claims that Heath and Farex misrepresented the risks insured under the Contract, alleging that Heath made misrepresentations to Kearney which induced him to sign the Contract. First Amended Com-

plaint ¶¶ 72–76. The First Amended Complaint adds a cause of action against Heath for negligent misrepresentation. *Id.* ¶¶ 189–95. Specifically, St. Paul alleges that Playford made false representations in November 1988 to induce Kearney to enter into the Contract on behalf of St. Paul. *Id.* at ¶¶ 48–50. The claim is based on a duty "to provide correct information" arising out of "possession of superior knowledge not available to Plaintiff; taking positive actions to conceal the true facts; knowledge that Plaintiff was acting under a mistaken belief; the duty to disclose present in every reinsurance transaction; or creating a false impression by providing some facts but concealing others." *Id.* ¶ 192.

After the completion of discovery, Heath moved for summary judgment on St. Paul's negligent misrepresentation claim. Heath argued that: (1) the Court had already ruled that Defendant owed no duty to Plaintiff to support a negligence claim, and (2) Plaintiff failed to demonstrate a "special relationship" between it and Defendant. (*See* Def.'s Mem. Supp. Mot. S.J. at 29–31.) That motion was subsequently referred to Magistrate Judge Lee to issue a report and recommendation.

The Magistrate Judge issued a Report and Recommendation dated July 26, 1995 ("July 1995 Report"). The July 1995 Report recommended that the Court grant Heath's motion for summary judgment. July 1995 Report at 46. The Magistrate Judge held that this Court's prior dismissal of St. Paul's negligence claim constituted the "law of the case," barring the negligent misrepresentation claim. *Id.* at 46–52. Alternatively, the Magistrate Judge found St. Paul's negligent misrepresentation claim legally insufficient because nothing in the record showed a "special relationship" between St. Paul and Heath. *Id.* at 52–54. St. Paul objected to this portion of the July 1995 Report pursuant to Federal Rule of Civil Procedure 72.

In its December 1995 Opinion, the Court adopted the Magistrate Judge's finding that St. Paul's negligent misrepresentation claim

was barred by the law of the case. *St. Paul Fire and Marine Ins. Co.,* 1996 WL 19028, at *9. Thus, the Court declined to review the Magistrate Judge's alternate ruling concerning the sufficiency of the negligent misrepresentation claim. *Id.* at *10.

On January 31, 1996, St. Paul filed a motion, pursuant to Local Rule 3(j) and Rule 59(e), for reargument of the portion of this Court's December 1995 Opinion granting summary judgment to Heath on its negligent misrepresentation claim. St. Paul also moved for clarification of the December 1995 Opinion. For the reasons set forth below, the motion is denied.

## DISCUSSION

### I. *St. Paul's Motion for Reargument*

#### A. *The Legal Standards of Rule 59(e) and Local Rule 3(j)*

The standards governing a motion for reargument pursuant to Local Rule 3(j) and a motion to amend judgment pursuant to Rule 59(e) are identical.[1] *See, e.g., Monaghan v. SZS 33 Assocs., L.P.,* 153 F.R.D. 60, 65 (S.D.N.Y.1994).

Local Rule 3(j) provides in pertinent part: "there shall be served with the notice of motion [for reargument] a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." S.D.N.Y. R. 3(j). In order for a court to grant reargument, a movant must demonstrate that the Court overlooked factual matters or controlling decisions put before it in the underlying motion. *Walsh v. McGee,* 918 F.Supp. 107, 110–11 (S.D.N.Y. 1996); *Monaghan,* 153 F.R.D. at 65. A motion for reargument "may not advance new facts, issues, or arguments not previously presented to the court." *Walsh,* 918 F.Supp. at 110 (citing *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,* No. 86 Civ. 6447, 1989 WL 162315, at *3 (S.D.N.Y. Aug.4, 1989)).

 To avoid repetitive arguments on issues already considered fully by the court,

---

1. Because the standard for St. Paul's Local Rule 3(j) and Rule 59(e) motion is the same, the Court refers to the motion as a "motion for reargument."

Local Rule 3(j) and Rule 59(e) are narrowly construed and strictly applied. *In re Houbigant, Inc.*, 914 F.Supp. 997, 1001 (S.D.N.Y. 1996); *Ameritrust Co. Nat'l Ass'n v. Dew*, 151 F.R.D. 237, 238 (S.D.N.Y.1993). A motion for reargument "is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved." *In re Houbigant*, 914 F.Supp. at 1001. Moreover, as this Court has previously held, reargument is not a "forum for new theories or for 'plugging the gaps of a lost motion with additional matters.'" *CMNY Capital, L.P. v. Deloitte & Touche*, 821 F.Supp. 152, 162 (S.D.N.Y.1993) (Lowe, J.) (citing *McMahan & Co. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 727 F.Supp. 833, 833 (S.D.N.Y.1989)). Nevertheless, when the requisites of a motion for reargument have *not* been met, a court may address the merits of the movant's argument to apprise the movant that, even if reargument had been permitted, it would have been unsuccessful. *See, e.g., id.*

### B. *St. Paul's Claims for Reargument*

St. Paul essentially makes the following three claims in support of reargument: (1) the Court "inadequately considered" caselaw that negligent misrepresentation sounds in fraud, which would preclude application of this Court's dismissal of its negligence claim as the law of the case; (2) the Court overlooked caselaw that its negligent misrepresentation claim is based on a different kind of duty than the previously dismissed negligence claim; and (3) the Court overlooked

the discretionary nature of the "law of the case" doctrine in light of new evidence establishing a "special relationship" between it and Heath.

### 1. *Negligent Misrepresentation as a Fraud Claim*

■ St. Paul's assertion that its negligent misrepresentation claim is a fraud-based claim raises the very same argument previously considered and rejected by this Court in its December 1995 Opinion. *St. Paul Fire and Marine Ins. Co.*, 1996 WL 19028, at *9 n. 24. The Court held that negligent misrepresentation is not a fraud action, as its essential elements (*e.g.*, duty of care) differ from fraud (*e.g.*, scienter). *Id.* Because St. Paul has failed to cite any controlling decisions overlooked by the Court in the December 1995 Opinion, its motion for reargument on this ground is denied.[2]

### 2. *Duty Alleged in Negligent Misrepresentation Claim*

St. Paul also seeks reargument because, it claims, a "fundamental" difference exists between the duty of a negligent misrepresentation claim (pleaded in the First Amended Complaint) and a negligence claim (pleaded in the Original Complaint). (See Pl.'s Mem. Supp. Mot. Recons. at 6–11; Pl.'s Mem. Further Supp. Mot. Recons. at 8.) St. Paul argues that the Court overlooked caselaw that its negligent misrepresentation claim is based on a different duty than the previously dismissed negligence claim. The Court, however, did not "overlook" St. Paul's "new duty" claim. To the contrary, the Court's December 1995 Opinion explicitly addressed the argument,[3] but simply did not agree with

---

2. In further support of this argument, St. Paul contends that this Court's May 1993 Opinion, which held that a fraud action may lie where a party has a duty to disclose information, casts doubt on its finding in the December 1995 Opinion that negligent misrepresentation is not a fraud action. (*See* Pl.'s Mem. Supp. Mot. Recons. at 4.) St. Paul never argued this point in its original motion. To do so in a motion for reargument is improper. *See, e.g., McMahan & Co. v. Donaldson, Lufkin & Jenrette Secs. Co.*, 727 F.Supp. 833, 834 (S.D.N.Y.1989) (denying reargument on issue not previously raised by movant

in original motion because motion cannot "plug gaps" with additional matters).

3. In fact, the December 1995 Opinion discusses the same paragraphs of the Original Complaint and the First Amended Complaint that St. Paul cites in its Memorandum of Law in Support of Motion for Reconsideration or Reclarification. *Compare St. Paul Fire and Marine Ins. Co.*, 1996 WL 19028, at *9–*10 n. 25 (discussing ¶¶ 68, 93–94 of Original Complaint in conjunction with ¶¶ 72–75, 190, 192 of First Amended Complaint) *with* Pl.'s Mem. Supp. Mot. Recons. at 10–11

Plaintiff's characterization. *St. Paul Fire and Marine Ins. Co.*, 1996 WL 19028, at *10. The Court found no fundamental difference between the negligent misrepresentation claim, which was simply more detailed, and the previously dismissed negligence claim. *Id.* at *10 n. 25. The court held that the duty element of both claims "aros[e] out of the same factual predicate." *Id.* at *10.

Here, once again, St. Paul offers no set of facts or caselaw overlooked by the Court in reaching its determination.[4] Even if the Court granted reargument on this ground, St. Paul's "new duty" claim is unavailing. In the Original Complaint, St. Paul alleged that "[a] reinsurance broker owes a duty of care as a professional to all parties in the negotiation and placement of reinsurance and retrocession transactions." Original Complaint ¶ 93. Similarly, in its motion papers, St. Paul bases its negligent misrepresentation claim on "allegations that Heath acted as a professional independent reinsurance broker." (*See* Pl.'s Mem. Supp. Mot. Recons. at 7.) These claims allege the same duty, that of a "professional broker" to a reinsurer. Thus, contrary to St. Paul's argument, no new duty has been asserted.

### 3. *Failure to Properly Exercise Discretion*

St. Paul argues that the Court "failed to give proper consideration" to the discretionary nature of the law of the case doctrine in light of new facts evidencing its "special relationship" with Heath. (*See* Pl.'s Mem. Supp. Mot. Recons. at 11–13.) St. Paul, however,

did not make this argument before the Court in its original motion. This new assertion, therefore, does not provide a basis for reargument. *See, e.g., Walsh,* 918 F.Supp. at 114–15 (denying reargument because movant did not raise argument in original motion).

### C. *Negligent Misrepresentation Claim Would Still Fail*

▌ Even if the Court granted St. Paul reargument on its "special relationship" claim, it would prove unavailing. In the July 1995 Report, Magistrate Judge Lee found St. Paul's negligent misrepresentation claim legally insufficient because the record failed to reflect a "special relationship" between St. Paul and Heath. July 1995 Report at 52–54. The Court agrees.

▌ Under New York law, there is no cause of action for negligent misrepresentation absent a "special relationship of trust or confidence between the parties." *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 63–64 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). Something more than the trust and reliance between an ordinary buyer and seller must be established. *Id.; Estate of T.C. Sabarese v. First Nat'l Inv. Corp.,* No. 92 Civ. 8139(LAP), 1994 WL 573320, at *4 (S.D.N.Y. 1994). Furthermore, to establish a special relationship, an "arm's length business relationship is not enough." *United Safety of Am., Inc. v. Consolidated Edison Co.,* 213 A.D.2d 283, 623 N.Y.S.2d 591, 593 (1st Dep't 1995); *see. e.g., Banque Arabe Et Int'l D'Investissement v. Maryland Nat'l Bank,* 819

---

(comparing ¶¶ 68, 94 of Original Complaint with First Amended Complaint).

4. St. Paul also argues that the Court overlooked the fact that the Original Complaint did not include a negligent misrepresentation claim and, thus, incorrectly "conclud[ed] that the new negligent misrepresentation claim was always part of St. Paul's negligence claim that had been dismissed." (*See* Pl.'s Mem. Supp. Mot. Recons. at 9–10.) Once again, St. Paul attempts to make arguments not previously raised in its original motion. Thus, reargument is inappropriate on this ground. In any event, St. Paul's argument is unpersuasive because it misperceives this Court's "law of the case" ruling. Contrary to St. Paul's reading of the Court's December 1995 Opinion, the Court did not find that St. Paul pled negligent misrepresentation in the Original Com-

plaint, thereby requiring dismissal under the "law of the case" doctrine. Rather, the Court discarded St. Paul's negligent misrepresentation claim because it agreed with the July 1995 Report's finding that St. Paul "had not identified any source of a duty that could give rise to a cause of action for negligence against Heath." *St. Paul Fire and Marine Ins. Co.,* 1996 WL 19028, at *9. This finding pertained to *all* negligence claims, including negligent misrepresentation. *Cf. Hudson Eng'g Assocs. v. Kramer,* 204 A.D.2d 277, 277, 614 N.Y.S.2d 157, 158 (2nd Dep't 1994) (upholding summary judgment for defendant on negligence and negligent misrepresentation claims because no triable issue of fact existed as to whether defendant owed duty of care to plaintiff).

F.Supp. 1282, 1292–93 (S.D.N.Y.1992) (no "special relationship" found between sophisticated financial institutions who negotiated agreement in arms-length transaction), *aff'd*, 57 F.3d 146 (2d Cir.1995). Finally, where no triable issue of fact as to the "special relationship" element exists, summary judgment on the negligent misrepresentation claim is appropriate. *See, e.g., Congress Finan. Corp. v. John Morrell & Co.*, 790 F.Supp. 459, 474 (S.D.N.Y.1992) (granting summary judgment for defendant on negligent misrepresentation claim upon finding no evidence that parties had "closer degree of trust and confidence" than ordinary contractual relationship).

▮▮▮ St. Paul contends that a professional "independent insurance broker owes a duty of care" to a third-party reinsurer who contracted with its principal. (*See* Pl.'s Mem. Supp. Mot. Recons. at 8, 13 (citing *Ambassador Ins. Co. v. Truly Nolan of Am., Inc.*, 514 F.Supp. 985 (S.D.N.Y.1981) ("*Ambassador I*")).) St. Paul's argument fails. An ordinary relationship of broker to insurer does not, by itself, give rise to a "special relationship." *See Ambassador Ins. Co. v. Euclid Servs., Inc.*, No. 80 Civ. 1235 (CBM), 1984 WL 341 (S.D.N.Y.1984) ("*Ambassador II*").[5] St. Paul asks this Court to extend the law to permit any conduct by a broker with regard to reinsurer who contracts with its principal to result in a "special relationship." This request has no basis in law or the facts of this case.

St. Paul also argues that its "face-to-face negotiations" with Heath give rise to a "special relationship." (*See* Pl.'s Mem. Supp. Mot. Recons. at 13 (citing *MEI Int'l Inc. v. Schenkers Int'l Forwarders, Inc.*, 807 F.Supp. 979 (S.D.N.Y.1992); *Polycast Technology Corp. v. Uniroyal, Inc.*, 792 F.Supp. 244 (S.D.N.Y.1992).))[6] Contrary to St. Paul's assertions, "ordinary arm's length negotiations" do not create a special relationship sufficient to sustain an action for negligent misrepresentation. *American Protein Corp.*, 844 F.2d at 64; *see also, Accusystems, Inc. v. Honeywell Information Sys., Inc.*, 580 F.Supp. 474, 481 (S.D.N.Y.1984) (finding no special relationship between plaintiff buyer and defendant seller after months of negotiations and assurances by defendant's salesmen as to quality of goods); *Sanitoy, Inc. v. Shapiro*, 705 F.Supp. 152, 155 (S.D.N.Y.1989) (if seller's "representation that a buyer can rely on his expertise and the buyer's reliance were enough to create the necessary special relationship, the exception would swallow the rule.").

The cases upon which St. Paul relies to support this argument are not analogous. In

---

**5.** St. Paul's reliance on *Ambassador I* is unpersuasive, as the court subsequently dismissed plaintiff insurer's negligent misrepresentation claim on a motion for summary judgment. *See Ambassador II*, 1984 WL 341, at *4. In that case, the court held that no "special relationship" arose, as a matter of law, from the "normal relationship of broker to insurer." *Id.* Two factors convinced the court that no "special relationship" existed between the parties. First, there was no contract binding plaintiff insurer and defendant broker. *Id.* Second, "nothing in their conduct [during negotiations] created a special relationship." *Id.* Because plaintiff failed to show that defendant had assumed obligations beyond the conventional duties of a broker as in other cases, the court granted summary judgment on the negligent misrepresentation claim to defendant. *Id.* In this case, nothing in the record suggests that Heath assumed any responsibilities beyond its conventional duties as a broker.

**6.** In further support of this argument, St. Paul cites *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 82–83 (2d Cir.1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981). The *Mal-*

*lis* court applied the majority rule, derived from § 552 of the Restatement (2d) of Torts, which provides: "that the seller be acting in the course of his business, that the information be supplied for the guidance of the buyer, and that the buyer justifiably relied on it." *Id.* at 83. The Second Circuit predicted that the New York courts would adopt the Restatement test. *Id.* However, in 1989, the New York Court of Appeals rejected the Restatement test, adopting the more-restrictive limited privity rule. *See Ossining Union Free Sch. Dist. v. Anderson*, 73 N.Y.2d 417, 541 N.Y.S.2d 335, 338, 539 N.E.2d 91, 95 (1989) (defining duty element "more narrowly than other jurisdictions" and rejecting Restatement rule). *Accord* Susan L. Martin, *If Privity is Dead, Let's Resurrect It: Liability of Professionals to Third Parties for Economic Injury Caused By Negligent Misrepresentation*, 28 Am. Bus. L.J. 649, 656 (1991) (noting *Ossining's* rejection of Restatement's actually foreseen test and adoption of limited privity rule); Michael W. Martin, *Fairness Opinions and Negligent Misrepresentation: Defining Investment Bankers' Duty to Third–Party Shareholders*, 60 Fordham L.Rev. 133, 153–156 (1991) (same). Thus, *Mallis* is unpersuasive.

*MEI Int'l Inc.,* the plaintiff sought the professional advice of the defendant, a customs broker that "held itself out as an expert." 807 F.Supp. at 986. The court imposed a duty of care on the defendant because the plaintiff's specific request that the defendant act as an "honest broker," as it had done on two prior occasions, created a reasonable expectation between the parties that the plaintiff would rely on the defendant's professional advice. *Id.* Here, on the other hand, Heath negotiated with St. Paul on Farex's behalf. There is nothing in the record to suggest that St. Paul sought Heath's advice. Nor does the evidence in the record support a finding that Heath acted as a "broker" ("honest" or otherwise) on St. Paul's behalf.

*Polycast* is also distinguishable. In that case, the corporate defendants sold their subsidiary to the plaintiff. *Polycast,* 792 F.Supp. at 247. In denying defendants' summary judgment motion, the court found a special relationship between the parties because the defendants "repeatedly vouched for their projections" of the earnings of the subsidiary, had superior information throughout the negotiations, and formed a new corporation capitalized with over $100 million to effect the transaction. *Id.* at 270. In this case, by contrast, no evidence suggests, nor does St. Paul assert, that Heath made assurances, promises, or warranties to induce St. Paul to sign the Contract. No evidence in the record supports a finding that the negotiations for the Contract required any additional effort or investment by Heath to effect the transaction.

Lastly, St. Paul argues that the "long-term relationship between Kearney and Heath" gives rise to a "special relationship." (*See* Pl.'s Mem. Supp. Mot. Recons. at 14 (citing *Thomas v. N.A. Chase Manhattan Bank,* 1 F.3d 320 (5th Cir.1993).)) St. Paul's reliance on Thomas is misplaced. In that case, an investor, not a party to the case, hired defendant broker to locate an investment partner. *Thomas,* 1 F.3d at 322. Defendant contacted plaintiff, its business cohort on other projects, as a prospective partner for the investor. *Id.* at 327. Defendant sought a broker's fee from plaintiff and the investor. *Id.* at 324. Plaintiff formed a partnership with the investor based on defendant's assurances that the investor was a "highly-valued client"; the relationship, however, proved ruinous. *Id.* at 322.

Plaintiff sued defendant for negligent misrepresentation and the court found a "special relationship" between the parties based on their prior dealings and evidence in the record that defendant approached plaintiff for a "broker's fee." *Id.* at 327. The court held that defendant "was not directly opposite" to plaintiff in the transaction, but instead served as an "intermediary" between plaintiff and the investor. *Id.* at 324. Here, nothing in the record suggests that Heath served in any way as a broker on St. Paul's behalf or that Heath acted as an "intermediary" between St. Paul and Farex. Thus, *Thomas* is inapposite.

As the foregoing discussion has demonstrated, the cases finding a "special relationship" between parties with prior or ongoing dealings involve more intimate associations than ordinary business transactions. *See, e.g., Brown v. Stinson,* 821 F.Supp. 910, 915 (S.D.N.Y.1993) (finding "special relationship" between defendant investment advisor and plaintiff because plaintiff relinquished control of her money to defendant and viewed defendant as her advisor); *Mathis v. Yondata,* 125 Misc.2d 383, 480 N.Y.S.2d 173, 178 (Sup.Ct. Monroe County 1984) (denying defendants' motion for summary judgment on negligent misrepresentation claim because detailed promises, representations, and warranties made by defendants for purpose of guiding plaintiffs in business relationship created "special relationship" between parties); *Coolite Corp. v. American Cyanamid Co.,* 52 A.D.2d 486, 384 N.Y.S.2d 808, 811 (1st Dep't 1976) (finding "intrinsically [ ] more intimate association" than ordinary business relationship between parties because defendant required plaintiffs to form new company with solid capitalization before parties could enter distributorship agreement); *see also supra* pp. 204–05 (distinguishing *MEI, Polycast,* and *Thomas* ).

Nothing in the record shows that Heath committed itself to any additional effort, expense, or warranty with regard to the Contract. As evidence of a special relationship,

St. Paul offers: (1) Kearney's testimony concerning his prior dealings with Heath and their discussions about the Contract, and (2) MacKensie–Green's testimony regarding his relationship with Kearney. This evidence, however, does not fall within the rubric of essential factors required by caselaw to create a "special relationship."

The portion of Kearney's deposition relied upon by St. Paul indicates the following: (1) Kearney first spoke to Heath about the Contract in mid-October 1988; (2) Kearney requested additional loss information from Heath; (3) Playford told Kearney that the lineslip was "running very well, although some of the accounts still had a way to go" before executing the renewal slip; and (4) Kearney dealt primarily with Playford and MacKensie–Green at Heath, which was one of the top five brokers providing business to St. Paul. (*See* Pl.'s Objections July 1995 Report at 26–27 (citing Kearney Dep. at 13, 18–19, 1250, 1283–85 attached at Ex. B, at G and H to App. Exs. Pl.'s Objections July 1995 Report ("Kearney Dep.").).) This testimony shows nothing more than an arm's length business transaction.[7]

In its brief, St. Paul asserts that "MacKensie–Green and Kearney testified that they had a relationship of trust and reliance." (*See* Pl.'s Mem. Supp. Mot. Recons. at 14.) In fact, MacKensie–Green testified that he had a "good relationship" with Kearney. (*See* MacKensie–Green Dep. at 158.) The fact that the parties had a "good relationship" does not evidence that they enjoyed a special relationship more "intimate" than an ordinary business relationship.

Accordingly, the court finds nothing in the record to support the existence of a special relationship between St. Paul and Heath. Thus, even if the Court were to grant reargument, Heath would again prevail on its motion.

**7.** A portion of the Kearney deposition which St. Paul fails to cite supports the Court's conclusion. In his testimony, Kearney made clear that St. Paul and Heath occupied "opposing" sides, negotiating vigorously to achieve their own ends. See Kearney Dep. at 21–22 (describing negotiations as "we were at opposing [sides]—it's quite normal for a broker—we call it broking, to broke an underwriter, It's how business is done.").

## II. *St. Paul's Motion for Reclarification*

St. Paul asks the Court to clarify the portion of the December 1995 Opinion that states: "[t]he Magistrate Judge found that Plaintiff failed to point to *any duty* owed to St. Paul by Heath." (*See* Pl.'s Mem. Supp. Mot. Recons. at 16 (citing *St. Paul Fire and Marine Ins. Co.*, 1996 WL 19028, at *9.)) St. Paul claims that, without clarification, "Heath might argue that, in the context of St. Paul's fraud claim, this Court had determined that it would not have a duty to disclose omitted material facts to St. Paul...." (*Id.*) The Court's December 1995 Opinion, however, made clear that its prior dismissal of St. Paul's negligence claim precluded St. Paul from pleading additional negligence claims. *St. Paul Fire and Marine Ins. Co.*, 1996 WL 19028, at *9. In no way does the December 1995 Opinion suggest that St. Paul's fraud claim is now dismissable. Thus, that portion of the December 1995 Opinion is self-explanatory and need not be clarified.

### CONCLUSION

For the foregoing reasons, St. Paul's motions for reargument and clarification of its December 1995 Opinion are denied.

It Is So Ordered.

Kearney further testified that he independently judged Heath's presentation of the Contract, which he skeptically viewed as a "broker argument." *See id.* at 32 ("I agreed with [Playford] ... that the worst case scenario ... would be about $2–1/2 million.... Now, John's a broker. This was part of his broker argument, but given what we were discussing, I agreed with his analysis").