■ MatlinPatterson ATA Holdings LLC, Appellant, v Federal Express Corporation, Respondent. [929 NYS2d 571]—

This case arises from a business relationship between defendant Federal Express Corporation (FedEx) and nonparty ATA Airlines (ATA). ATA participated on FedEx's team (to be discussed, infra) to fly charter missions for the United States Military. Over the years, ATA encountered financial difficulties, including chapter 11 bankruptcy, and plaintiff MatlinPatterson ATA Holdings LLC (MP Holdings) invested and loaned ATA substantial sums to assist its financial health.

In 2008, FedEx terminated its agreement to keep ATA on its team for fiscal years 2006 through 2009, and ATA filed for bankruptcy. MP Holdings commenced this tort action against FedEx, alleging negligent misrepresentation and third-party promissory estoppel. Upon review of FedEx's CPLR 3211 (a) (7) motion to dismiss the complaint, we find that even if MP Holdings, an investor in ATA, can be deemed to have standing, in its capacity as a lender to ATA, to bring an individual action against FedEx, it has not pleaded facts sufficient to support either of its claims. FedEx's breach of its agreement to ATA (the determination of the trial court in an action in another forum) does not give rise to tort liability in favor of MP Holdings. Moreover, MP Holdings

and FedEx had absolutely no connection to each other extrinsic to their mutual relationships with ATA that gives rise to any independent duties or obligations between them.

The United States Department of Defense contracts with commercial airlines to provide a significant portion of its airlift requirements for military personnel. The complaint alleges that the Government's military charter business awards almost $2 billion a year to the airline industry. Smaller air carriers that specialize in charters, such as ATA, are well suited to military charter missions because the cost of their services is significantly less than the rate paid by the Government. The Government allows smaller airlines to enter into "teaming arrangements" with other carriers. During the time frame relevant to this dispute, FedEx handled contracts for a number of carriers (the FedEx team). ATA was a member of the FedEx team for most of the period between 1983 and 2008 (more than 20 years), and it split the majority of the FedEx team's military passenger missions with one other member airline. FedEx renewed its contract with the military on an annual basis.

In October 2004, ATA filed for chapter 11 voluntary reorganization in the United States Bankruptcy Court for the Southern District of Indiana. MP Holdings, an investor in the airline industry, committed $120 million to finance ATA's emergence from bankruptcy. As part of this investment, in December 2005, MP Holdings provided ATA with $30 million in debtor-in-possession (DIP) financing. On February 28, 2006, ATA was discharged from bankruptcy with a new parent corporation, New ATA Holdings, Inc. MP Holdings' $30 million DIP investment was converted to equity in New ATA Holdings, Inc. MP Holdings also made a $24 million loan to ATA and made an additional equity capital contribution of $45 million to New ATA Holdings, Inc. By February 2006, MP Holdings had become a 70% shareholder in New ATA Holdings, Inc., which, in April 2007, was renamed Global Aero Linguistics, Inc. (GAL).

To raise additional capital for the acquisition of new aircraft for the military charter business, ATA sought written assurance from FedEx that it would remain on the FedEx team. On September 7, 2006, FedEx supplied this assurance, in a letter signed by representatives from both FedEx and ATA (the FedEx letter), which stated:

"The letter will serve as the agreement for the distribution between ATA and Omni [Int'l Airline] of both fixed and expansion for both wide and narrow body passenger business in the AMC Long Range International Contract for FY07 - FY09.

"It is agreed that distribution for the above passenger seg-

ments will be fifty-fifty (50% - 50%) respectively for both wide and narrow body and for both fixed and expansion.

"Please indicate your concurrence by signing as indicated below and returning to the undersigned.

"We look forward to a continued successful relationship over the period."

Plaintiff alleges that "FedEx was aware that th[is] letter would be used to provide a limited group of institutional investors, such as and including MP Holdings, with written assurance that ATA would be distributed 50% of the FedEx Team's military passenger flights through at least FY09." Subsequent to the execution of the letter, ATA replaced some of its older aircraft with DC-10s. Thereafter, in the first quarter of 2007, ATA obtained a $28 million bridge loan from MP Holdings to meet its cash needs, including purchasing and integrating the new aircraft into its fleet, maintaining the existing fleet, and training pilots.

In early 2007, New ATA Holdings and MP Holdings considered acquiring World Air Holdings, the parent company of World Airways and North American, two airlines that offered private and military passenger and cargo charters. With MP Holdings as prime investor, on August 14, 2007, GAL acquired World Air Holdings for $313 million. MP Holdings alleges that between the date of the FedEx letter and October 2007, it invested $186 million in ATA and its parent company.

On January 22, 2008, FedEx sent ATA a letter terminating it from the FedEx team effective September 2008. On February 6, 2008, ATA and New ATA Holdings met with FedEx in an attempt to persuade FedEx to honor the 2006 agreement. FedEx refused, and, as a result of the loss of its military charter business, ATA ceased operations and again filed for bankruptcy in April of 2008. In June of that year, ATA brought an action against FedEx in federal district court in the Southern District of Indiana, alleging, inter alia, breach of contract based upon the FedEx letter (*see ATA Airlines, Inc. v Federal Express Corp.*, 2010 WL 1754164, 2010 US Dist Lexis 39910 [SD Ind 2010]). ATA prevailed in that action, and a judgment was rendered in its favor for lost profits of over $65 million (*see Federal Jury Favors Airline, Awards $66M in Breach of Contract Suit*, 2010 WL 5579622). At oral argument, FedEx stated that it has appealed the judgment.

In July of 2008, MP Holdings brought this action, alleging two causes of action, negligent misrepresentation and promissory estoppel. In November 2008, FedEx moved to dismiss the complaint pursuant to CPLR 3211 (a) (7). The court granted

FedEx's motion. It found that plaintiff lacked standing to assert a claim for negligent misrepresentation because there was insufficient evidence of the required "special relationship" between MP Holdings and FedEx. It also concluded that the unusual circumstances warranting the application of promissory estoppel to a third-party promisee did not exist in this case. We affirm.

On review of a pre-answer motion to dismiss a complaint for failure to state a cause of action (CPLR 3211 [a] [7]), the court must accept all of the allegations in the complaint as true, and, drawing all inferences from those allegations in the light most favorable to the plaintiff, determine whether a cognizable cause of action can be discerned therein, not whether one has been properly stated (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 634, 636 [1976]; *Dulberg v Mock*, 1 NY2d 54, 56 [1956]; *Hirschhorn v Hirschhorn*, 194 AD2d 768 [1993]). However, the complaint "must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory" (*Huntington Dental & Med. Co., Inc. v Minnesota Min. & Mfg. Co.*, 1998 WL 60954, *3, 1998 US Dist LEXIS 1526, *9 [SD NY 1998]).

As a threshold matter, corporations, such as ATA, exist independently from their shareholders, and in many cases, "an individual shareholder cannot secure a personal recovery for an alleged wrong done to a corporation" (*New Castle Siding Co. v Wolfson*, 97 AD2d 501, 502 [1983], *affd* 63 NY2d 782 [1984]; *see Elghanian v Harvey*, 249 AD2d 206, 207 [1998]; *EJS-Assoc Ticaret Ve Danismanlik Ltd. Sti. v American Tel. & Tel. Co.*, 1993 WL 546675, 1993 US Dist LEXIS 18454 [SD NY 1993]; *Jones v Niagara Frontier Transp. Auth. [NFTA]*, 836 F2d 731, 736 [2d Cir 1987], *cert denied* 488 US 825 [1988]). This is true regardless of the level of the shareholders' interest in the corporation: "The fact that an individual closely affiliated with a corporation (for example, a principal shareholder, or even a sole shareholder), is incidentally injured by an injury to the corporation does not confer on the injured individual standing to sue on the basis of either that indirect injury or the direct injury to the corporation" (*New Castle*, 97 AD2d at 502).

However, a shareholder can pursue a direct claim against a third party where "it appears that the injury to a shareholder resulted from the violation of a duty owing to the shareholder from the wrongdoer, having its origin in circumstances independent of and extrinsic to the corporate entity" (*id.*).

Here, MP Holdings argues that it has standing independent of ATA because it brings this suit not as a shareholder, but in a separate capacity as an institutional lender. It alleges that FedEx

had a duty to it separate and apart from its duties to ATA, and that it suffered damages based upon FedEx's breach thereof. While there is sparse factual support for the conclusion that FedEx's failure to honor its letter agreement was the breach of a direct duty to MP Holdings, we nonetheless review the merits of the pleaded claims to determine whether, based upon the liberal standards applied upon review of a CPLR 3211 (a) (7) motion, any recognizable cause of action can be discerned from this complaint.

The elements of a claim for negligent misrepresentation are: "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information" (*J.A.O. Acquisition Corp. v Stavitsky*, 8 NY3d 144, 148 [2007]; *see Hudson Riv. Club v Consolidated Edison Co. of N.Y.*, 275 AD2d 218, 220 [2000]).

Plaintiff contends that under the standard set forth in *Kimmell v Schaefer* (89 NY2d 257 [1996]), it has established the requisite "special relationship" with FedEx, by alleging that FedEx knew that its letter would be used "to provide a limited group of institutional investors, such as and including MP Holdings, with written assurance that ATA would be distributed 50% of the FedEx Team's military passenger flights through at least FY09." FedEx counters that it had absolutely no duty to MP Holdings, an institutional investor, which seeks to circumvent the Bankruptcy Code by asserting what should be a shareholder derivative suit as a direct action in tort.

MP Holdings alleges that the FedEx letter was not a contract, but instead a false statement, and it seeks to recover damages (from both loans and equity investments) flowing to it from FedEx's failure to abide by the written assurance of business to ATA, i.e., participation on its team for military charter business through fiscal year 2009.

However, assuming, for purposes of this pre-answer motion to dismiss, the truth of plaintiff's allegations, plaintiff's claim for negligent representation still requires a showing of a duty running from FedEx to MP Holdings, or, stated otherwise, that MP Holdings was justified in its reliance upon FedEx's alleged false statement. The required inquiry includes: (1) "whether the person making the representation held or appeared to hold unique or special expertise"; (2) "whether a special relationship of trust or confidence existed between the parties"; and (3) "whether the speaker was aware of the use to which the information would be put and supplied it for that purpose" (*Kimmell*, 89 NY2d at 264).

Reading the complaint as liberally as required, we find no support for the conclusion that there was a "special relationship of trust or confidence" between FedEx and MP Holdings (*United Safety of Am. v Consolidated Edison Co. of N.Y.*, 213 AD2d 283, 286 [1995]; *see Elghanian v Harvey*, 249 AD2d 206, 206 [1998], *supra*). The complaint alleges that, knowing that the FedEx letter was to be used to support investment decisions by "a small group of institutional investors, such as and including MP Holdings," FedEx had a duty to convey accurate statements to MP Holdings as to the true intended term of its agreement with ATA. However, the FedEx letter does not mention MP Holdings, it was signed by representatives from ATA and FedEx, and there is no allegation or evidence that MP Holdings received any separate representations or promises or had any other conversations or communications with FedEx regarding its plans to keep ATA on its team. In fact, MP Holdings does not allege the existence of any independent relationship with FedEx, and there is no evidence of any oral or written communication between them. Both MP Holdings and FedEx are large commercial entities, and both made decisions that invariably involved risks. That FedEx would terminate its agreement with ATA was a risk undertaken by MP Holdings. It does not give rise to an actionable claim of negligent misrepresentation.

Plaintiff's allegation of negligent misrepresentation also fails because there is no allegation and no view of the evidence that would support a conclusion that the FedEx letter was incorrect at the time it was drafted (*compare Suez Equity Invs., L.P. v Toronto-Dominion Bank*, 250 F3d 87, 94 [2d Cir 2001] [as inducement to investment, defendants altered report requested by plaintiff investors, deleting all of the patently negative information bearing on the financial health of the target health care financing venture]). The complaint alleges that ATA and FedEx had a 20-year relationship. It also alleges that it is unclear why FedEx cancelled its agreement with ATA. The complaint does not allege, and there is no factual support for a conclusion that FedEx did not intend to honor the three-year agreement in September 2006 (*see Suez*, 250 F3d at 94). Plaintiff concedes that if the FedEx letter is considered a contract, it has no claim for negligent misrepresentation because the false statement element cannot be met. As we agree with the Indiana district court that there was a binding contract between ATA and FedEx, we dismiss MP Holdings' claim for negligent misrepresentation.

The elements of a claim for promissory estoppel are: (1) a promise that is sufficiently clear and unambiguous; (2) reasonable reliance on the promise by a party; and (3) injury caused

by the reliance (*New York City Health & Hosps. Corp. v St. Barnabas Hosp.*, 10 AD3d 489, 491 [2004]; *Johnson & Johnson v American Natl. Red Cross*, 528 F Supp 2d 462, 463 [SD NY 2008]). Here, the alleged promise was that ATA would receive 50% of FedEx's military charter business through fiscal year 2009.

As ATA, not MP Holdings, was the direct recipient of this promise, plaintiff alleges third-party promissory estoppel (*Henneberry v Sumitomo Corp. of Am.*, 2005 WL 991772, *5-6, 2005 US Dist LEXIS 7475, *17 [SD NY 2005]). Under this theory, a third party to an unfulfilled promise may sue for damages suffered by reasonable reliance thereupon (2005 WL 991772, *5, 2005 US Dist LEXIS 7475, *16-17). The *Henneberry* plaintiff was the chief executive officer (CEO) of a company formed to provide an electronic ticketing promotion for Major League Baseball through Mastercard. In alleged reliance upon a number of investment promises made by a third party, including an unfulfilled promise to invest between $3 million and $5 million in the ticketing promotion, the plaintiff made 10 substantial personal loans to his corporation. However, unbeknownst to the plaintiff, the defendant investor allegedly disparaged his management skills to clients and forged relationships with these same individuals that impinged upon the plaintiff's job as CEO. The plaintiff had a number of direct oral and written communications with the investor about these acts, and about problems with the venture, which ultimately failed. The district court denied defendant's Federal Rules of Civil Procedure rule 12 (b) (6) motion to dismiss the plaintiff's claim for third-party promissory estoppel, stating that "at this stage of the proceeding the Court must only determine whether plaintiff has stated a claim which he should be allowed to support factually" (*compare Henneberry*, 2005 WL 991772, *6, 2005 US Dist LEXIS 7475, *18).

The facts of this case are not analogous to those in *Henneberry*. There is only one promise at issue here, the three-year retainer contained in the FedEx letter, which was executed between FedEx and ATA exclusively. MP Holdings does not allege, and the evidence does not indicate, any contact between MP Holdings and FedEx, let alone any promises or inducements for loans.

Further, MP Holdings' claim for promissory estoppel is precluded because a breach of contract claim may not give rise to tort liability unless a "legal duty independent of the contract—i.e., one arising out of circumstances extraneous to, and not constituting elements of, the contract itself—has been

violated" (*Brown v Brown*, 12 AD3d 176, 176 [2004]). FedEx had no legal duty to MP Holdings extrinsic to the contract sued upon in Indiana.

Accordingly, even if we were to assume that MP holdings has standing to bring a direct claim against FedEx, its inability to allege any relationship between itself and FedEx extrinsic to the FedEx letter is fatal to its complaint. Moreover, to insulate MP Holdings, an institutional investor, from losses based upon failed loans and poor investments by imposing tort liability upon a third-party corporation that made a business decision to terminate a contract with the subject of the loans and investments would be dangerous precedent in the commercial context, which is supported and sustained by calculated risks. At this juncture, plaintiff's recovery appears to be limited to its status in conformity with the absolute priority rules of the Bankruptcy Court in the Southern District of Indiana.

We have considered and rejected plaintiff's additional contentions. Concur—Gonzalez, P.J., Tom, Acosta, Richter and Román, JJ.