Behler v Kai-Shing Tao (2024 NY Slip Op 01337)

Behler v Kai-Shing Tao

2024 NY Slip Op 01337

Decided on March 14, 2024

Appellate Division, First Department

MANZANET-DANIELS, J.P. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 14, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels
Ellen Gesmer Lizbeth González Tanya R. Kennedy Kelly O'Neill Levy

Index No. 652567/20 Appeal No. 741 Case No. 2022-03237 

[*1]Albert Behler, Plaintiff-Appellant,
v
Kai-Shing Tao, Defendant-Respondent.

Plaintiff appeals from the order of the Supreme Court, New York County (Andrew Borrok, J.), entered on or about June 8, 2022, which granted defendant's motion to dismiss the complaint.

Becker, Glynn, Muffly, Chassin & Hosinski LLP, New York (Jesse T. Conan, Richard N. Chassin and Walter E. Swearingen of counsel), for appellant.
Olshan Frome Wolosky LLP, New York (Kerrin T. Klein and Thomas J. Fleming of counsel), for respondent.

MANZANET-DANIELS, J.P. 

On this appeal, we are asked to consider whether a parties' oral side agreement to repurchase shares survived the subsequent amendment of the LLC agreement concerning the same subject matter, and whether the contesting party's "acknowledgment" of the existence of the side agreement subsequent to the execution of the amended LLC agreement had any legal import. We hold that the oral side agreement did not survive the amendment of the LLC agreement, which contains a merger clause and has provisions at odds with the side agreement; and that any so-called acknowledgement of the oral side agreement did not work as an estoppel or otherwise alter the calculus. We therefore affirm the order appealed from.
The complaint alleges that plaintiff and defendant were longtime friends who had collaborated on a number of business ventures prior to the transaction at issue. At all times relevant to this case, defendant controlled Remark Holdings, Inc., a publicly traded company, and Digipac LLC, a vehicle through which defendant routed the investments of friends and family to Remark. In 2012, plaintiff and defendant entered into an oral contract (the exit opportunity agreement) pursuant to which plaintiff agreed to invest $3 million in Remark through Digipac on the condition that defendant provide plaintiff the opportunity to cash out of his investment (i) if Remark's shares reached a certain value per share, or (ii) on the five-year anniversary of plaintiff's initial investment. Pursuant to the exit opportunity agreement, plaintiff wired $1.5 million to defendant on or about November 27, 2012, and the remaining $1.5 million in October 2013. Through these transfers, plaintiff acquired a 24.14% stake in Digipac.
Remark's shares did not reach the agreed-upon price point, so defendant was required under the exit opportunity agreement to provide plaintiff the opportunity to cash out his shares in Remark (held through Digipac) on or about November 27, 2017, the five-year anniversary of plaintiff's initial investment in Digipac (the deadline). During a June 2017 meeting with plaintiff, defendant acknowledged and discussed the impending deadline. Despite this acknowledgment, defendant failed to cash out plaintiff's investment, which was worth $11,610,201.10 at the deadline. Thereafter, during a January 2018 dinner, plaintiff confronted defendant about, and defendant admitted, defendant's breach of the exit opportunity agreement. In response, plaintiff brought this action asserting claims for breach of contract [*2]and promissory estoppel.
In its motion to dismiss, defendant argued that the exit opportunity agreement is unenforceable because it was superseded by an amendment to Digipac's Limited Liability Company Agreement. In support, defendant submitted Digipac's original Limited Liability Agreement, dated October 11, 2012 (the original LLC agreement), which designated Digipac as a single-member limited liability company formed pursuant to the laws of Delaware and defendant as the initial manager of Digipac, defined defendant as the "Sole Member" of Digipac, conferred upon the Sole Member the exclusive discretion to make distributions, and provided that it "may be amended only in a writing signed by the Sole Member." The original LLC agreement does not provide for the alteration of any of defendant's rights thereunder upon a partial transfer of Digipac's ownership.
Subsequent to the exit opportunity agreement and plaintiff's resulting investment, on June 4, 2014 defendant executed the Amended and Restated Limited Liability Company Agreement of Digipac, LLC (the amended LLC agreement, together with the original LLC agreement, the LLC agreements). Plaintiff did not sign the amended LLC agreement. The amended LLC agreement contains the following relevant provisions, among other things:
Defendant is defined as the manager of Digipac;
No member is entitled to receive any distributions from Digipac (it is not contested that plaintiff is such a member), and defendant has sole discretion to determine distributions to members;
No member shall have any rights or preferences in addition to or different from those of any other member unless detailed in the amended LLC agreement;
Any transfer of a membership interest must be consented to by defendant in writing, that such consent "may be withheld or conditioned for any reason," and that any transfer occurring in violation thereof shall be "void ab initio";
Any amendment modifying the obligations of any member in a manner "disproportionately adverse" relative to the rights of other members shall be effective only with such member's consent; and
A prohibition against recoupment of damages or losses from defendant directly unless for "willful misconduct" (which is not alleged in this case).
Further, the amended LLC agreement contains a clear and unambiguous integration and merger clause providing that it "constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter;" the "subject matter" being the "allocation of profits and losses among the Members, distributions among the Members, [and] the rights, obligations and interests of the Members to each other and to the Company" with respect to their investments in Digipac. Both LLC agreements contain a choice of law provision [*3]stating that they are governed by Delaware law.
The court below granted defendant's motion in its entirety. It found that plaintiff, as a member of Digipac, was bound by the amended LLC agreement under Delaware law regardless of whether he signed the agreement. The court further held that the amended LLC agreement superseded the exit opportunity agreement by virtue of the merger clause, and that defendant was therefore under no obligation to make the distributions contemplated by the exit opportunity agreement. [FN1]
For the reasons set forth below, we affirm Supreme Court's decision.
DISCUSSION
/i>
As a threshold matter, we hold that Delaware substantive law governs the LLC agreements, and therefore the issues at bar, by virtue of the choice of law provisions included therein (see Ministers & Missionaries Benefit Bd. v Snow, 26 NY3d 466, 476 [2015][where parties include a choice of law provision in a contract, they intend the chosen state's substantive law to be applied]).[FN2]
As demonstrated infra, plaintiff was a party to the LLC agreements and therefore bound by the agreements' choice of law provisions.
On appeal, plaintiff advances several arguments as to how the exit opportunity agreement was not superseded by, and therefore survives, the amended LLC agreement. For the reasons set forth below, we find that the exit opportunity agreement was superseded by the amended LLC agreement, and that defendant's obligations under the exit opportunity agreement were extinguished by the terms of the amended LLC agreement.
First, plaintiff argues that defendant was not authorized to unilaterally amend the original LLC agreement because he was no longer the "Sole Member" of Digipac at the time of the amendment. This argument is without merit. While the original LLC agreement did provide that it "may be amended only in a writing signed by the Sole Member," it defined the "Sole Member" as defendant, specifically "Kai-Shing Tao, an individual." Because the original LLC agreement defined "Sole Member" as defendant, and because that definition was not conditioned upon defendant's status as the sole member of Digipac in fact,[FN3]
defendant was authorized to unilaterally enter Digipac into the amended LLC agreement without the consent, written or otherwise, of plaintiff or any other members of Digipac.
Second, plaintiff argues that the amended LLC agreement does not supersede the exit opportunity agreement because it is not expressly referenced by the merger clause. This argument is also unavailing. As demonstrated below, plaintiff's investment constituted his acquiescence to the terms of Digipac's LLC agreement and its subsequent amendment. Delaware's stringent statutory regime and case law, though sometimes leading to harsh results, unambiguously advises prospective investors in a closely held LLC (especially one considering a multi-million-dollar investment) to scrutinize the existing LLC agreement and condition their investment upon the clear written delineation thereunder [*4]of (i) their rights regarding subsequent distributions, (ii) their rights pertaining to any prior agreement which they intend to integrate into the LLC agreement, and (iii) the survival of their contracted-for rights in the event of any future amendments to the LLC agreement.[FN4]
Plaintiff did not do so in this case and his investment is thus exclusively governed by the terms of the amended LLC agreement.
Delaware LLC law is "explicitly contractarian," and courts enforce and construe LLC agreements as any other contract (In re Coinmint, LLC, 261 A3d 867, 890 [Del Ch 2021]). As a member of Digipac following his November 2012 investment, plaintiff was a party to, and bound by, the amended LLC agreement under Delaware law (see Del Code Ann title 6, § 18-101(9) ["[a] member or manager of a limited liability company or an assignee of a limited liability company interest is bound by the limited liability company agreement whether or not the member or manager or assignee executes the limited liability company agreement"]; see also Seaport Vil. Ltd. v Seaport Vil. Operating Co., LLC, 2014 WL 4782817, *2, 2014 Del Ch LEXIS 183, *4 [Del Ch Sept. 24, 2014, C.A. No. 8841-VCL] [stating that under § 18-101(9) a "LLC and its members are parties to and bound by the LLC agreement, regardless of whether they sign it" and applying rule]).
As a result of settled Delaware law, plaintiff is thus bound by the merger clause (see LCM Holdings GP, LLC v Imbert, 114 AD3d 406, 406 [1st Dept 2014][applying Delaware law and stating "[t]the parties' rights vis-À-vis each other as members of a Delaware LLC are defined by the operating agreement"]).
Here, the merger clause explicitly states that the amended LLC agreement supersedes all prior written and oral agreements concerning the subject matter of the amended LLC agreement, which includes the transfer of membership interests, distributions among Digipac's members and the rights, obligations, and interests of the members to each other and to Digipac. The amended LLC agreement clearly concerns the same subject matter as the exit opportunity agreement, which scheduled Digipac's liquidation of plaintiff's membership interest and distribution to plaintiff of the proceeds thereof.[FN5]
Because the amended LLC agreement and exit opportunity agreement both concern the liquidation and distribution of plaintiff's interest in Digipac, the amended LLC agreement, by virtue of the merger clause, supersedes the exit opportunity agreement (see In re Coinmint, 261 AD3d at 897 [noting in the context of an LLC agreement that a merger clause "proscribe[s] the Court's consideration of all oral and written communications and agreements that occurred prior to the [LLC] agreement"]; see also Levy Family Invs., LLC v Oars + Alps LLC, 2022 WL 245543, *10, 2022 Del Ch LEXIS 20, *23-24 [Jan. 27, 2022, C.A. No. 2021-0129-JRS][dismissing claim for breach of alleged oral agreement to substitute promissory note with convertible note where promissory note contained [*5]explicit merger clause and did not reference prior and/or contemporaneous oral contract]).[FN6]

Further, in contrast to the cases cited by the dissent, the very terms of the amended LLC agreement unambiguously evidence Digipac's intent for the agreement to exclusively govern distributions to Digipac's members. The amended LLC agreement did not integrate the cash-out and distribution provisions of the exit opportunity agreement nor obligate defendant to perform the transfer sought by plaintiff thereunder. Mandating defendant's performance of the exit opportunity agreement would be inconsistent with many of the amended LLC agreement's core terms, including, among other things, that: (i) no member is entitled to receive distributions from Digipac, (ii) defendant has sole discretion to determine distributions to members, (iii) no member shall have any rights or preferences in addition to or different from those of any other member unless specified in the agreement, and (iv) defendant must consent in writing to any transfer of membership interest, and such consent may be withheld or conditioned for any reason.
Defendant's alleged acknowledgments of his obligations under exit opportunity agreement in 2017, and breach thereof in 2018, do not change this result. The exit opportunity agreement was superseded, and the defendant's obligations thereunder extinguished, by the amended LLC agreement in 2014.[FN7]
 Plaintiff argues that defendant's alleged acknowledgments might constitute a modification of the amended LLC agreement. However, the amended LLC agreement provides that no term may be modified except by defendant's written consent or waived, except by express written agreement to that effect signed by the party to whom the benefit runs. These provisions both vitiate defendant's "acknowledgement" of any oral distribution agreement. We note that, to the extent that Delaware law permits oral modification of a contract, the Delaware Supreme Court recently ruled that such a result is not appropriate in the context of an LLC agreement where the parties' course of conduct does not explicitly evidence a modification (see Holifield v XRI Inv. Holdings LLC, 304 A3d 896, 925 n 130 [Del 2023][rejecting plaintiff's argument for oral modification of LLC agreement and strictly enforcing terms of LLC agreement by distinguishing case from (i) prior Delaware cases not involving LLC agreements, stating that such cases do not "consider the strong freedom of contract principles that animate Delaware LLC law," and (ii) the prior Delaware Supreme Court case of Pepsi-Cola Bottling Co. of Asbury Park v Pepsico, Inc., 297 A2d 28, 30 [Del 1972], which found a waiver of integration where the parties performed a myriad of oral pricing modifications to the service contract over several decades]). Defendant's alleged acknowledgments of the exit opportunity agreement do not constitute, under Delaware law, the course of conduct necessary to orally modify the amended LLC agreement. Accordingly[*6], we dismiss plaintiff's first cause of action for breach of the exit opportunity agreement.
We also dismiss plaintiff's second cause of action for promissory estoppel. Under Delaware law, a claim for promissory estoppel requires a plaintiff to show the following: (i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise (SIGA Techs., Inc. v PharmAthene, Inc., 67 A3d 330, 347-348 [Del 2013]). "Promissory estoppel does not apply, however, where a fully integrated, enforceable contract governs the promise at issue" (id. at 348). As we have discussed supra, distributions to Digipac's members are governed exclusively by the amended LLC agreement. Even assuming that the exit opportunity agreement was enforceable, it would be a contract governing the very promise at issue and thus cannot undergird an estoppel claim.[FN8]
Plaintiff's claim based on promissory estoppel for the alleged promises made in the exit opportunity agreement therefore lacks merit.[FN9]

We have considered plaintiff's remaining arguments and find them unavailing.
CONCLUSION
Accordingly, the order of the Supreme Court, New York County (Andrew Borrok, J.), entered on or about June 8, 2022, which granted defendant's motion to dismiss the complaint should be affirmed, without costs.
All concur except Gesmer and Kennedy, JJ. who dissent in a separate Opinion by Gesmer, J. as follows:

GESMER, J. (dissenting)
 

I respectfully dissent. I would reverse the decision of the motion court and deny defendant's motion to dismiss as to all counts of the complaint.
On a motion to dismiss, we afford the pleadings a liberal construction, accord plaintiff the benefit of every favorable inference, and determine only whether the facts pleaded fit into any cognizable legal theory. On a motion to dismiss under CPLR 3211(a)(1), defendant may only prevail if its documentary evidence "utterly refutes" plaintiff's claims (see Leon v Martinez, 84 NY2d 83 [1994]). Here, for the reasons discussed below, I would find that defendant has failed to meet this burden and would reverse the motion court.
The fundamental issue in this case is whether a manager of an LLC may persuade a friend to invest in his LLC by orally promising the friend a guaranteed exit opportunity at a specific time and price, and then, with total impunity, amend the LLC's operating agreement unilaterally, by, among other things, including a merger provision which he now contends nullifies their oral agreement, relieves him of all obligations under it, and deprives his friend of all legal remedies, even though nothing in the amended operating agreement is inconsistent with Tao's obligations to perform under the oral agreement. As stated, it is clear that the answer must be no. Yet [*7]that is just the conduct that the motion court approved, and what the majority would have this Court do, in violation of basic principles of contract law and fundamental fairness.
FACTS
Treating the allegations in the complaint as true, as we must in considering this motion to dismiss (Leon v Martinez, 84 NY2d 83, 87-88 [1994]), the relevant facts are as follows. Plaintiff Behler and defendant Tao, who met in 2004, became close friends and engaged in occasional business ventures together. In 2012, Tao urged Behler to
invest in a publicly traded company he controlled called Digipac LLC. Tao had created Digipac to acquire and hold shares of Remark Holdings, Inc., where Tao served as CEO. Behler was initially hesitant to invest, as he was concerned that it would be almost impossible to liquidate his interest in a closely held company like Digipac. In order to induce Behler to invest, Tao agreed in October 2012 to provide Behler two alternative mechanisms by which he could exit and cash out of the investment. Specifically, Tao agreed to permit Behler to cash out of the Digipac investment if the publicly traded price of Remark hit $50/share. Alternatively, if the share price of Remark never reached $50/share, Tao agreed that, within five years, he would provide Behler with an exit opportunity from Digipac based on the value at that time of Digipac's Remark holdings (the exit opportunity agreement).[FN10]
In other words, Behler was guaranteed an exit opportunity if the shares of Remark hit $50/share or within five years from the date of his investment. This was consistent with their long course of conduct of doing business through oral agreements. Relying on this exit opportunity agreement, Plaintiff invested a total of $1.5 million dollars in Digipac in November 2012 and an additional $1.5 million in October 2013, giving him 24.14% ownership of Digipac.
At the time of the exit opportunity agreement, Digipac was operating under a minimal two page operating agreement which named Tao as its Sole Member and as its initial Manager. The operating agreement specified that, if Tao transferred his entire membership, the transferee would become the Sole Member, but did not specify whether Tao would remain the Sole Member if he transferred only part of his membership interest.
On June 4, 2014, Tao unilaterally drafted and executed an Amended and Restated Limited Liability Company Agreement (the 2014 amended agreement) between Digipac and its members, which Tao refers to in his brief as an "operating agreement . . . concern[ing] Digipac's affairs and business." Tao did not seek input from Behler as to the 2014 amended agreement and Behler did not sign the 2014 amended agreement. It contains a merger clause which states that the 2014 amended agreement "constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein . . . and supersedes all prior . . . agreements . . . with respect to such subject matter[*8]" (the merger clause). It did not specify that the exit opportunity agreement was among the agreements superseded.
Between 2012 and 2017, Behler and Tao met or spoke about every three months. On June 28, 2017, they met at a wine bar where they discussed the status of Behler's Digipac investment, and Tao acknowledged the impending five-year deadline for him to provide Behler with the promised exit opportunity. Nevertheless, at the five-year anniversary, he did not provide Behler an exit opportunity. At a dinner meeting in January 2018, Behler confronted Tao about his breach of the exit opportunity agreement. Tao acknowledged that he had breached the exit opportunity agreement, but stated that he did not want to liquidate Digipac's Remark holdings. At no time did he state that he was no longer bound by their oral agreement. Since then, Tao has continued to disregard his obligations under the exit opportunity agreement.
As of November 2017, the share price of Remark was $9.15. At that time, Behler held 5,256,315 shares of Digipac. At $9.15 per share, under their oral agreement, Behler was entitled to be bought out for $11,610,201.10.
Plaintiff sued Tao for his breach of the exit opportunity agreement and for promissory estoppel. The motion court granted Tao's motion to dismiss Behler's complaint for failure to state a cause of action and based on documentary evidence. Behler now appeals.
DISCUSSION
First, I would hold that plaintiff stated a cause of action for breach of contract, as the parties' exit opportunity agreement is sufficiently definite to be enforced (see Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp., 78 NY2d 88, 91 [1991]; Eagle Force Holdings, LLC v Campbell, 187 A3d 1209, 1232 [Del 2018]). Second, according plaintiff the benefit of every possible inference, I would hold that, for the purposes of this motion to dismiss, there is a cognizable legal theory that the exit opportunity agreement between Behler and Tao was not superseded by the 2014 amended agreement (see Leon, 84 NY2d at 87-88). I would further find that the 2014 amended agreement does not "utterly refute" plaintiff's claims. Third, I would find that Behler's promissory estoppel cause of action is sufficiently pleaded to survive the motion to dismiss (see Castellotti v Free, 138 AD3d 198, 204 [1st Dept 2016]; Chrysler Corp. [Delaware] v Chaplake Holdings, Ltd., 822 A2d 1024, 1031 [Del 2003]).
.The parties' alleged exit opportunity agreement is sufficiently definite to survive defendant's motion to dismiss.1 [FN1]
The exit opportunity agreement in this case, as pleaded by the plaintiff, has no fatal flaw or missing material term which would require this Court to find the terms of this oral agreement indefinite. The doctrine of definiteness protects parties from the court imposing contractual obligations on them when the parties did not intend to enter into a contract. However, "at some point virtually every agreement can be said to have a degree of indefiniteness[*9], and if the doctrine is applied with a heavy hand it may defeat the reasonable expectations of the parties in entering into the contract" (Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 483 [1989]). Therefore, "[s]triking down a contract as indefinite and in essence meaningless 'is at best a last resort'" (Matter of 166 Mamaroneck Ave. Corp., 78 NY2d at 91).
To induce Behler's investment in Digipac, the parties agreed orally, among other things, that Tao would give Behler the opportunity to exit from the investment within five years. The agreement further provided that Behler's cash-out would be based on the value of Digipac's holdings in Remark. These terms are clear. Although the agreement did not set forth the precise manner in which the value of Digipac's holdings was to be calculated, this does not render the price term indefinite (see Cobble Hill, 74 NY2d at 483; Matter of 166 Mamaroneck Ave. Corp., 78 NY2d at 92). Indeed, Behler's buy out would be based on easily ascertainable benchmarks such as the closing price of Remark, a publicly traded company, on the date of the buy out; the number of Remark shares held by Digipac and the worth of those shares; and Behler's percentage of ownership in Digipac (Cobble Hill, 74 NY2d at 483 [a price term is sufficiently "definite if the amount can be determined objectively without the need for new expressions by the parties; a method for reducing uncertainty to certainty might, for example, be found within the agreement or ascertained by reference to an extrinsic event, commercial practice or trade usage"]). Therefore, Behler has sufficiently alleged the definiteness of the exit opportunity agreement to survive defendant's motion to dismiss.
II. This record supports a cognizable legal theory that the exit opportunity agreement was not superseded by the 2014 amended agreement, which does not "utterly refute" plaintiff's claims.
Behler has sufficiently pleaded that the exit opportunity agreement is different in focus and subject matter from the 2014 amended agreement. Accordingly, the 2014 amended agreement's merger clause has no effect on the exit opportunity agreement. The majority describes the exit opportunity agreement as a side agreement. I agree—which is exactly why I would find that the 2014 amended agreement does not extinguish that agreement or require the dismissal of plaintiff's claims. The exit opportunity agreement, as described in the complaint, is an agreement made solely between two friends to induce Behler to invest by providing that Tao would make it possible for him to cash out his investment under certain circumstances and by a date certain. The 2014 amended agreement involved different parties (Digipac, as well as Digipac members who were not parties to the exit opportunity agreement) and governs in general terms the rights, obligations, and interests of Digipac's members to each other and to Digipac. Behler adequately pleads that it does not govern the separate, [*10]standalone agreement made between Behler and Tao which induced Behler to invest in Digipac. Absent the exit opportunity promised by Tao, Behler alleges he would not have invested in Digipac.
The cases cited by the majority in support of their position that the 2014 amended agreement extinguished the exit opportunity agreement are distinguishable because, in those cases, the written agreements containing the integration clauses were between the same parties and concerned the same subject matter as the alleged oral agreements which the merger clauses extinguished (In re Coinmint, 261 A3d 867, 897 [Del Ch 2021]; Levy Family Invs., LLC v Oars + Alps LLC, 2022 WL 245543, *10, 2022 Del Ch LEXIS 20, *23-24 [Jan. 27, 2022 C.A No 2021-0129-JRS]). My colleagues have not cited any case in which an oral agreement between two individuals that did not impose any obligations on any other persons or entities was superseded by a subsequent unilateral modification of an LLC operating agreement.
In the underlying transaction in the Levy Family Invs. litigation, plaintiff had lent money to defendant Company in exchange for a promissory note. Plaintiff contended that it had an oral agreement with defendant Company and its founders that would permit it to convert the promissory note into a convertible note or other equity investment in the defendant Company. In the resulting litigation, plaintiff alleged in its third cause of action that defendants had breached their oral contract. The Delaware Court of Chancery ruled against plaintiff and dismissed its third cause of action, finding that the clear and unambiguous language of the promissory note did not provide for conversion to another equity investment and contained both an integration clause and a clause prohibiting modification except in a writing executed by the parties. The court also held that, even if the court could have considered extrinsic evidence, the evidence offered did not support plaintiff's position. Accordingly, Levy Family Invs. is distinguishable because it involved a written agreement signed by the parties to the alleged oral agreement, and because the parties and subject matter of the alleged oral agreement and the promissory note were identical. I also note that Levy Family Invs. appears to have involved a dispute about whether a binding oral contract was made. In this case, Tao has never denied that he entered into the exit opportunity agreement exactly as described by Behler.
In Coinmint, the court found that an integration clause in the operating agreement would "proscribe the Court's consideration of all oral and written communications and agreements that occurred prior to the agreement when interpreting it" (Coinmint, 261 A3d at 897 [emphasis added]). In contrast, here, there is no need to look to the exit opportunity agreement to interpret the 2014 amended agreement, since they deal with different parties and subject matter. Moreover, in Coinmint, the court found that plaintiff had [*11]set aside the terms of the prior agreements through waiver, estoppel and acquiescence, none of which was alleged in this case (Coinmint, 261 A3d at 888). Finally, as discussed further below, enforcement of Tao's obligations under the exit opportunity agreement is not inconsistent with any term of the 2014 amended agreement.
I disagree with the majority that Tao's performance of his obligations under the exit opportunity agreement would be inconsistent with the 2014 amended agreement. Notably, Behler has sued only Tao, in his individual capacity, to enforce the exit opportunity agreement. He seeks "an order of specific performance, directing [Tao] to purchase his Digipac shares for $11,610,201.10." Digipac is not a party to this action, and Behler does not seek any relief from Digipac.
The majority asserts three reasons why the 2014 amended agreement would be inconsistent with Tao's performance of his obligations under the exit opportunity agreement. First, they cite to the 2014 amended agreement's transfer provisions. However, Tao's performance of his obligations under the exit opportunity agreement by a transfer of Behler's Digipac shares to Tao would not violate the 2014 amended agreement. While the 2014 amended agreement provides that transfers and assignments of Digipac shares require the prior written approval of Tao in his capacity as Manager, this would not prevent Tao, as Manager, from approving a transfer of Behler's shares to himself as a private individual, since, under the 2014 amended agreement, Tao has absolute discretion to approve or reject transfers.
Next, the majority asserts that the distribution provisions of the 2014 amended agreement would prevent Tao from performing under the exit opportunity agreement. However, a transfer of Behler's shares to Tao would not constitute a distribution under the 2014 amended agreement if Tao paid Behler with his own funds. Even if the transaction were structured as a distribution, Tao has absolute discretion to determine distributions to members under the 2014 amended agreement.
Finally, the provision of the 2014 amended agreement that my colleagues characterize as prohibiting Digipac members from having "any rights or preferences in addition to or different from those of any other member" refers solely to voting rights. That provision appears in Article VI of the agreement, entitled "Membership, Meetings, Voting." Paragraph 6.1 provides, in its entirety:
"Members and Voting Rights. Except as expressly set forth in this Agreement, no Member shall have any rights or preferences in addition to or different from those possessed by any other Member. Members shall have the right to vote upon only those matters as to which this Agreement or the Act requires or permits a vote of the Members. Unless otherwise provided in this Agreement, actions of Members shall be pursuant to the prevailing vote of a Majority-in-Interest. No Member shall be prohibited from voting merely by reason of the fact that [*12]such Member would be voting on a matter of particular interest to that Member."
In contrast, Article VIII governs "Transfers of Membership Interests." Article VIII provides that members may transfer "all or any part" of their shares "upon the prior written approval" of Tao, who, as manager, has absolute discretion as to transfers. Accordingly, Tao's compliance with his obligations under the exit opportunity agreement, as stated in the complaint, would not be inconsistent with or displace any provision of the 2014 amended agreement.
Alternatively, Behler argues that the terms of each agreement and their relation to each other are, at the very least, subject to more than one reasonable interpretation. I agree. A finding of ambiguity would require a trial under both New York law (see Berkeley Research Group, LLC v FTI Consulting, Inc., 157 AD3d 486, 489 [1st Dept 2018][where "a contract's provisions are subject to more than one or conflicting reasonable interpretations, the agreement will be considered ambiguous, requiring a trial on the parties' intent"]) and Delaware law (Sunline Commercial Carriers, Inc. v CITGO Petroleum Corp., 206 A3d 836, 847-852 [Del 2019] [where the contract's terms are reasonably susceptible to two or more interpretations or could have two or more different meanings, a trial was required to determine the parties' intent]). Furthermore, in case of doubt or ambiguity, the 2014 amended agreement must be construed most strongly against Tao, the party who prepared it, and favorably to Behler, a party who had no voice in its preparation or the selection of its language. This is true under both New York law (Jacobson v Sassower, 66 NY2d 991, 993 [1985]) and Delaware law (Twin City Fire Ins. Co. v Delaware Racing Assn., 840 A2d 624, 630-631 [Del 2003]).
I also agree with plaintiff that consideration of the law regarding waiver weighs against finding that the 2014 amended agreement extinguished the exit opportunity agreement. A waiver of valuable contract rights must be made knowingly and voluntarily. This is true under New York law (see Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y., 61 NY2d 442, 446 [1984]["A waiver is the voluntary abandonment or relinquishment of a known right. It is essentially a matter of intent which must be proved."]). It is also true under Delaware law, where the standards for proving waiver are "quite exacting" (AeroGlobal Capital Mgt., LLC v Cirrus Indus., Inc., 871 A2d 428, 444 [Del 2005][citation omitted]; see also Coinmint, 261 A3d at 893-894). As Behler had no role in the authorship, negotiation, or preparation of the 2014 amended agreement, I would not read the 2014 amended agreement as having caused Behler to relinquish his valuable contract rights under the exit opportunity agreement without his knowledge and without compensation.1 [FN2]
Finally, the complaint alleges that Tao explicitly acknowledged his obligations under the exit opportunity agreement in 2017 and 2018, several years after [*13]he executed the 2014 amended agreement. His acknowledgement weighs against finding on this motion to dismiss that the 2014 amended agreement superseded the exit opportunity agreement. Neither plaintiff nor I argue that Tao's subsequent acknowledgements of the exit opportunity agreement orally modified or displaced the 2014 amended agreement, as the majority asserts. Rather, I argue that these acknowledgments evidence Tao's understanding at that time that the exit opportunity agreement remained an enforceable contract that was made solely between the two friends and was different in subject matter from, and thus not affected by, the 2014 amended agreement.
An alternative interpretation would be that Tao intentionally misrepresented to Behler the status of the exit opportunity agreement at their meetings in 2017 and 2018, in order to lull him into inaction, or that he intentionally misrepresented his intentions to Behler when they initially agreed on the terms of the exit opportunity agreement. Either of these possibilities raises questions of material fact as to the parties' understandings and intentions. Accordingly, the 2014 amended agreement does not "utterly refute" plaintiff's claims (see Leon, 84 NY2d at 83).
For the reasons discussed above, viewing the facts in the light most favorable to plaintiff, as is required on a motion to dismiss, I would hold that Tao has not shown that the exit opportunity agreement was superseded by the 2014 amended agreement. Tellingly, the majority writing has not identified any decision in which a court nullified a LLC member's pre-existing rights under a separate contract solely on the basis of a general merger clause in the LLC's unilaterally adopted amended operating agreement.
III. Plaintiff sufficiently pleaded his cause of action for promissory estoppel.
Since, as discussed above, I disagree with the majority that enforcement of the exit opportunity agreement, as described in the complaint, would be inconsistent with the 2014 amended agreement, I would find that defendant has failed to meet his burden to demonstrate that the 2014 amended agreement extinguished the exit opportunity agreement. Accordingly, I would find that defendant was not entitled to dismissal of plaintiff's promissory estoppel cause of action at this stage of the case. Plaintiff is permitted to plead in the alternative to the extent that there is a dispute as to whether the exit opportunity agreement constituted a valid contract. This is true under both New York (Tahari v Narkis, 216 AD3d 557, 559 [1st Dept 2023]) and Delaware law (Chrysler Corp. [Delaware], 822 A2d at 1031).
I would apply New York law in determining the motion to dismiss the promissory estoppel claim because: (1) it is undisputed that the exit opportunity agreement was made in New York; (2) Behler only seeks to enforce the exit opportunity agreement against Tao; and (3) as discussed above, for the purposes of this motion to dismiss, the 2014 amended agreement had [*14]no effect on the exit opportunity agreement. In order to prevail on a theory of promissory estoppel, a party must establish: "(1) a promise that is sufficiently clear and unambiguous; (2) reasonable reliance on the promise by a party; and (3) injury caused by the reliance" (Matlin Patterson ATA Holdings LLC v Federal Express Corp., 87 AD3d 836, 841-842 [1st Dept 2011]). The elements under Delaware law are substantially similar, except that Delaware requires a showing that the promisor had a reasonable expectation of inducing action or forebearance on the part of the promisee, and that injustice may only be avoided by enforcing the promise (see Chrysler Corp. [Delaware], 822 A2d at 1032).
The motion court dismissed the promissory estoppel claim because the court viewed the promise as unclear and Behler's reliance as unreasonable. As discussed earlier, the exit opportunity agreement was clear and unambiguous. The complaint alleges that Tao made the promise with the expectation that Behler would invest in Digipac. Behler's investment in Digipac shows that he relied on Tao's promise. The reasonableness of his reliance is demonstrated by their prior course of conduct of engaging in business transactions together based on oral agreements. Even five years after they made the exit opportunity agreement, when Behler questioned Tao as to when he would meet his obligations, Tao did not deny that he was still bound by the exit opportunity agreement, thus further demonstrating the reasonableness of Behler's reliance. There is certainly no question that Behler was injured by his reliance on Tao's good faith. In the event of a finding after trial or a summary judgment motion that the exit opportunity agreement was not an enforceable contract for some reason, enforcing the promise under the doctrine of promissory estoppel would be necessary to avoid injustice.
Order, Supreme Court, New York County (Andrew Borrok, J.), entered on or about June 8, 2022, affirmed, without costs.
Opinion by Manzanet-Daniels, J.P., All concur except Gesmer and Kennedy, JJ. who dissent in an Opinion by Gesmer, J.
Manzanet-Daniels, J.P., Gesmer, González, Kennedy, O'Neill Levy, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 14, 2024

Footnotes

Footnote 1:Defendant also argued, and the court held, that the exit opportunity agreement was indefinite and incapable of being enforced. On appeal, plaintiff and the dissent expend considerable effort in arguing the exit opportunity agreement's definiteness. This issue is academic, however, given our finding that the exit opportunity agreement, if enforceable at its inception, was superseded by the amended LLC agreement and rendered unenforceable.

Footnote 2:The dissent's position that New York law governs this dispute is premised on the situs of the exit opportunity agreement's formation. This bypasses the central issue of whether the distribution and interest transfer provisions of the amended LLC agreement were displaced by the exit opportunity agreement. 

Footnote 3:The original LLC agreement provides for one specific instance where the Sole Member can be changed: where the Sole Member transfers all of his membership interest in Digipac, the transferee shall be admitted to Digipac as the new Sole Member upon the execution of an instrument signifying his agreement to be bound by the agreement's terms. Because there was no such transfer or instrument in this case, defendant remained the Sole Member of Digipac following the partial transfer of Digipac to plaintiff and retained all the rights pertaining thereto.

Footnote 4:Nothing in the record indicates that plaintiff was denied access to, or did not review, Digipac's LLC agreement prior to his investment. In breach of contract actions, "'Delaware courts do not rescue disappointed buyers from circumstances that could have been guarded against through normal due diligence and negotiated contractual protections'" (Zayo Group, LLC v Latisys Holdings, LLC, 2018 WL 6177174, *1 n 3, 2018 Del Ch LEXIS 540, *3 n 3 [Nov. 26, 2018, C.A. No. 12874-VCS], quoting Interim Healthcare, Inc. v Spherion Corp., 884 A2d 513, 551 n 305 [Del 2005], affd 886 A2d 1278 [Del 2005])).

Footnote 5:The dissent characterizes the exit opportunity agreement as "one made to induce [plaintiff's] investment," while omitting the agreement's operative function of providing a liquidation and distribution schedule for plaintiff's membership interest in Digipac.

Footnote 6:New York courts similarly find that merger clauses preclude consideration of prior oral contracts regarding the same subject matter as the written agreement (see Denenberg v Schaeffer, 137 AD3d 1197, 1198 [2d Dept 2016][dismissing claim for breach of prior oral contract to indemnify investor for losses where written share subscription agreement contained merger clause and did not contain indemnification provision]).

Footnote 7:The dissent cites no Delaware law that would compel a contrary result.

Footnote 8:Even assuming, as the dissent does, that an issue of fact exists as to the exit opportunity agreement's, the ultimate adjudication of this case would find that either the exit opportunity agreement or the amended LLC agreement governs defendant's alleged promise to liquidate and distribute plaintiff's Digipac interest at the deadline, thus rendering the promissory estoppel claim improper.

Footnote 9:This claim would also be dismissed under New York law, which requires that a promissory estoppel claim that is duplicative of a breach of contract claim must be dismissed (Kim v Francis, 184 AD3d 413, 414 [1st Dept 2020]).

Footnote 10:The majority disputes my characterization of the exit opportunity agreement as having been made to induce Behler's investment. However, since that is how Behler's complaint characterizes it, this Court is required to accept that fact as true on this motion to dismiss (Leon, 84 NY2d at 87-88). Furthermore, contrary to the majority's characterization, the exit opportunity agreement, as described in the complaint, imposes the obligation to buy out Behler's investment on Tao, not on Digipac.

Footnote 1:1
The complaint states, and it is undisputed, that the parties entered into the exit opportunity agreement in New York. Because I would hold that the 2014 amended agreement did not supersede the exit opportunity agreement, and because Behler only seeks to enforce the exit opportunity against Tao, New York law governs the issue of whether the exit opportunity agreement and its buy-out option are sufficiently definite. Tao apparently concedes this point, as his appellate brief only cites to New York law on this issue. In any event, Delaware law comports with New York law (see Eagle Force Holdings, 187 A3d at 1232 [adopting the definiteness test from the Restatement [Second] of Contracts § 33[2]: "terms are sufficiently definite if they 'provide a basis for determining the existence of a breach and for giving an appropriate remedy'. . . . [and] 'the court should not frustrate [the parties'] intention if it is possible to reach a fair and just result, even though this requires a choice among conflicting meanings and the filling of some gaps that the parties have left.'"]).

Footnote 2:2
My colleagues in the majority claim, without citing any law, that Delaware law "unambiguously advises" that, prior to deciding to invest in a closely held LLC, individuals must insist that the LLC agreement "delineat[e]. . . (i) their rights regarding subsequent distributions, (ii) their rights pertaining to any prior agreement which they intend to integrate into the LLC agreement, and (iii) the survival of their contracted-for rights in the event of any future amendments to the LLC Agreement." I disagree that this is the law in Delaware. If it were, there would be no viable litigation regarding the acts of LLC managers, since they could agree to any amendments to the LLC agreement sought by potential investors, and then unilaterally amend the LLC agreement to extinguish those amendments. However, even if it were the law, for the reasons discussed above, Behler has sufficiently pleaded that the 2014 amended agreement's merger clause did not extinguish the exit opportunity agreement.