**Mangold Mate, LLC v Metabook, Inc.**

2024 NY Slip Op 32588(U)

July 25, 2024

Supreme Court, New York County

Docket Number: Index No. 653496/2022

Judge: Nicholas W. Moyne

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  PART 41M

-----------------------------------------------------------------------------X

MANGOLD MATE, LLC,

|  |  |
|---|---|
| **INDEX NO.** | 653496/2022 |

Plaintiff,

|  |  |
|---|---|
| **MOTION DATE** | 01/27/2023 |

- v -

|  |  |
|---|---|
| **MOTION SEQ. NO.** | 001 |

METABOOK, INC.,CINERGISTIK, INC.

Defendant.

**DECISION + ORDER ON
MOTION**

-----------------------------------------------------------------------------X

HON. NICHOLAS W. MOYNE:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 81, 82, 83, 84, 90, 91, 92, 93, 94, 97, 122, 123

were read on this motion to/for                                    DISMISSAL

Upon the foregoing documents, it is

This action is brought seeking monetary damages and declaratory relief for an alleged breach of contract and/or fraud committed by defendant Metabook, Inc. ("Metabook")[1] The defendant has moved to dismiss the complaint.

## **BACKGROUND**

The plaintiff is a limited liability company whose sole owner and member is Tiffany Boydell, an attorney.  Plaintiff and defendant Metabook, now known as Cinergistik, entered into a written publishing contract ("the Publishing Contract") on or about September 15,2020.  Pursuant to the Publishing Contract, Metabook agreed to publish and promote a book about chess authored by Ms. Boydell's son, Oliver Boydell, called "He's Got Moves."  The book was published on December 8, 2020.

The Publishing Contract was signed by Ms. Boydell and defendant on September 15, 2020.  Among other things, the Publishing Contract specified that Defendants would publish a physical book edition and digital book edition on December 8, 2020, and would "meaningfully consult with [Ms. Boydell and Oliver] on all substantive matters relating to the production, publication and promotion of the Work, including: title, pricing;

---

[1] At some point in time, Metabook changed its name to Cinergistik, Inc. For ease of reference, the court will refer to the defendant as Metabook.

distribution, promotion; editorial and design matters," and provided that "Publisher shall have full discretion in final decisions relating to the production, publication and promotion of the Work." Alfonsi Aff. Exhibit A ¶¶ 2(a), 3(c)   The Publishing Contract specified the amount to be paid by plaintiff in connection with the project, the percentage amount of royalties plaintiff would receive and, that Metabook would pay royalties and render statements of account on a biannual basis. Id. ¶4(e). In the Publishing Contract, the plaintiff granted to defendant "the sole and exclusive right to license or otherwise dispose of [various, specified] subsidiary rights related to the Work or [Oliver] as a public personality and champion chess player," which, among others, included that the defendant would retain   subsidiary "rights to other ancillary or derivative creative content that may arise from the Work . . . ." Id. ¶5 With respect to promotion, the Publishing Contract states that "the Publisher agrees to undertake publicity and promotion of the Work and its Creator related to the announcement and launch of the Work and for a four-month period following publication." Id. ¶6(a). " Under the Publishing Contract, the plaintiff was obligated to make Oliver "reasonably available for promotion and marketing purposes." Id. ¶6(g).

The Publishing Contract further specifies that during the term, Oliver "shall not appear in, contribute to, or otherwise assist with any other projects related to the Work or its themes without Publisher's express consent," id. ¶7; and that, for a period of five years following the date of execution (September 15, 2020), any book-length work by Oliver had to be submitted to defendant before it was submitted to another publisher. Id. ¶8(a). Metabook would then have thirty days to notify plaintiff as to whether it wished to publish the work, and the parties would then have another 30 days to negotiate a mutually acceptable agreement. Id. If either Metabook informed plaintiff that it did not wish to publish a subsequent work or if after 30 days, the parties were unable to negotiate an acceptable agreement for publishing the work, the plaintiff would be free to submit the subsequent book to another publisher for consideration.  Id. The Publishing Contract required plaintiff to submit any project related to "He's Got Moves" or to Oliver to Defendants before it was submitted elsewhere. Id. ¶8(b).

Finally, and most critical to resolving this dispute, the Publishing Contract contains a merger clause which specifies: "This Agreement contains the entire understanding of the parties regarding the Work and supersedes any prior Agreement, understanding or arrangement between the parties, whether oral or in writing. It may not be modified or amended except by a writing executed by both parties." Id.

The complaint alleges four causes of action.  The causes of action are breach of contract, fraud, breach of fiduciary duty and declaratory judgment. On a motion to dismiss pursuant to CPLR 3211, "the complaint must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory." (MatlinPatterson ATA Holdings LLC v Federal Express Corp., 87 AD3d 836, 839 (1st Dept. 2011). "'Allegations consisting of bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence are not entitled [to be presumed to be true.]'" Mark Hampton, Inc. v Bergreen, 173 AD2d 220 [1st Dept. 1991] [internal citations omitted]; see also Skillgames, LLC v Brody, 1

653496/2022   MANGOLD MATE, LLC vs. METABOOK, INC. ET AL
Motion No. 001

Page 2 of 8

AD3d 247, 250 [1st Dept. 2003] ["factual allegations that do not state a viable cause of action, that consist of bare legal conclusions, or that are inherently incredible or clearly contradicted by documentary evidence are not entitled to such consideration."]

Dismissal is also warranted under CPLR 3211(a)(1), where the documentary evidence "resolves all factual issues as a matter of law, and conclusively disposes of the plaintiff's claim." (*Fortis Fin. Servcs, LLC v Fimat Futures USA*, 290 AD3d 383,383 [1st Dept. 2002]; see *also Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002] [3211(a)(1) motion should be granted "where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law."] Contracts and their terms, including merger clauses such as that in the Publishing Contract, are the kind of documentary evidence properly considered on a motion to dismiss pursuant to CPLR §3211(a)(1), and such a merger clause warrants granting a motion dismissing claims for breach of contract, breach of fiduciary duty and/or fraud where plaintiff's allegations are clearly precluded by the merger clause and/or barred by the parol evidence rule (*see Denenberg v Schaeffer*, 137 AD3d 1197, 1198 [2d Dept 2016]; *SNS Bank, N.V. v Citibank, N.A.*, 7 AD.3d 352, 354 [1st Dept 2004]).

## BREACH OF CONTRACT

Plaintiff's breach of contract cause of action asserts several discrete groups of promises or representations allegedly made by the defendants. First, the complaint alleges that Ms. Boydell, "relying upon the written and oral representations of Metabook [made prior to the time she executed the Publishing Contract on behalf of Plaintiff], invested substantial money to have the book published and promoted." Compl. ¶4. These representations according to the complaint, included an alleged promise by the defendant that it would invest or contribute money to the book project in an amount equal to that given by the plaintiff. Compl. ¶¶ 40, 44, 45; Boydell Aff. ¶¶6, 20-25. The complaint further alleges that defendants would treat Ms. Boydell and her son as "true partners" and would give them timely and detailed reports of sales and profits and expenses. Compl ¶5; Boydell Aff ¶¶ 18-21, 25, 27. These alleged representations are nowhere to be found in the Publishing Contract and any claims for breach of contract based on these representations must be dismissed (*see D'Artagnan, LLC v Sprinklr Inc.*, 192 AD3d 475, 477 [1st Dept 2021]). In opposing the motion, the plaintiff does not cite to any language in the Publishing Contract which obligated Metabook to pay the identical amount of cash towards the project as the plaintiff paid. Instead, Plaintiff infers this alleged obligation from oral and written representations allegedly made prior to the parties entering into the Publishing Contract. Boydell Aff. ¶¶18-21, 23, 25. Plaintiff also relies on an e-mail, sent after the Publishing Contract was signed, which stated "we share equally in both the costs and the profits." Id. ¶27. These representations constitute parole evidence utilized to modify or add to the terms of the Publishing Contract and any claims deriving from them are barred by the Publishing Contract's merger clause (*see Pate v. BNY Mellon-Alcentra Mezzanine III, LP*, 163 AD 3d 429, 430 [1st Dept. 2018]; *Morwitz v De Angelis*, 155 AD.3d 514 [1st Dept. 2017]; *Southern Advanced Materials, LLC v. Abrams*, 151 AD.3d 451, 452-453 [1st Dept. 2017]).

653496/2022  MANGOLD MATE, LLC vs. METABOOK, INC. ET AL
Motion No. 001

Page 3 of 8

[* 3]

Plaintiff next alleges that Defendants failed to pay it "the required royalties" (though Ms. Boydell admits she refused to cash the royalties sent to her in April 2021, Boydell Aff. ¶63) or provide the required income statement or sales data for "He's Got Moves" for the period from April 1, 2021 to December 17, 2021. Boydell Aff. ¶50. Defendants argue that this claim is vague and conclusory and not supported by any documentary evidence. Attached to Ms. Boydell's affidavit in opposition to the motion is an earnings statement purporting to show hardcover and digital royalties for the book from the period of December 18, 2021 through February 15, 2022. Ms. Boydell's affidavit does not explain or detail why she believes that the defendants did not pay her all of the royalties due under the Publishing Contract. She does not allege any facts supporting damages, only the conclusory speculation that "[Metabook] had not paid the required royalties." Boydell Aff. ¶50. Plaintiff's contention is that the Earnings Statements lacks details but there is no suggestion that the calculations were incorrect and the plaintiff does not dispute that the defendants not only gave her all of the information she was entitled to under the Publishing Contract but also answered all of her questions regarding sales of the book  The Earnings Statements contained all the necessary information needed including number of units sold, the net amount received from hard copy sales, the amount Defendants actually received from such sales, and the amount due to Plaintiff; and the same information for digital sales. Alfonsi MTD Aff. Ex. C at 43, 58-64, NYSCEF No. 10.

Additionally, documents submitted by the defendants demonstrate that defendants responded timely, usually the same day, to each of Ms. Boydell's requests for sales information. Alfonsi MTD Aff. Ex. C at 43, 58-64, NYSCEF No. 10. Indeed, on July 11, 2021, Ms. Boydell thanked defendants in writing for their immediate, detailed and fully responsive answers to her questions about sales and calculations, Alfonsi MTD Aff. Ex. C at 63; see id. at 58-65; and admitted, in writing, that she had received a "direct answer," in her words, from the defendants to her various sales-related questions on September 29, 2021. Id. at 58.  To allow a claim based on the plaintiff's sudden insistence that she was kept in the dark about sales of the book and her vague belief that she must have been entitled to more money would be allowing a claim based solely on conjecture and speculation and contradicted by documentary evidence.  Where a party has failed to come forward with evidence sufficient to demonstrate damages flowing from the breach alleged and relies, instead, on wholly speculative theories of damages, dismissal of the breach of contract claim is in order (see *Lexington 360 Assoc. v First Union Natl. Bank of N. Carolina*, 234 AD2d 187, 190 [1st Dept 1996]).

A related allegation claims that the defendants breached their obligation under the Publishing Contract to promote the book. The allegations are that: "Upon information and belief, defendants Metabook and Cinergistik did very little to promote the project, " Compl. ¶51; "failed to make vigorous efforts to promote the book . . . failed to meaningfully communicate and consult with Tiffany or Oliver," id. ¶¶55, 83, 89, 121, 122; and did not inform "Tiffany and Oliver of defendants' activities in publishing and promoting the book," id. ¶122.  To support its claim regarding the defendants' purported failure to promote the book, the plaintiff contends that Metabook failed "to commercially exploit the interest in chess that was generated by the popular Netflix Show "Queen's

653496/2022  MANGOLD MATE, LLC vs. METABOOK, INC. ET AL
Motion No. 001

Page 4 of 8

Gambit," Compl.¶57-60, and that "Metabook refused to promote the He's Got Moves book through US Chess," id. ¶89. The complaint also alleges that defendants breached the Publishing Contract because "Metabook did not vigorously promote the financial interests of Oliver," Compl.¶145, and that "defendants did not successfully market and promote Oliver's book . . . ." Id. ¶146.

In support of its motion to dismiss, the defendants have provided numerous documents which demonstrate that the defendants made substantial efforts to promote the book in a variety of ways, including through film and television. The substance of these documents is not disputed by the plaintiff in her opposition to the motion. Rather, the plaintiff merely argues that these efforts were insufficient and/or not diligently pursued. The problem for the plaintiff is there is nothing in the Publishing Contract which either guarantees a particular level of promotional coverage or obligates the defendants to utilize specific methods of promotion such as television appearances or collaborations with the US Chess Federation. The complaint also asserts that defendants breached the Publishing Contract because "they failed to provide any detail regarding how money was being spent in connection with the book, Compl.¶52; or about "costs, promotion or how much money they had expended or budgeted." Id.¶33. But again, nothing in the Publishing Contract imposes such an obligation on the defendants. Nor did the defendants make any contractual promises or guarantees about the number of books that would be sold or how much profits the plaintiff would receive as a result of the sales of the book.

Once again, the plaintiff is asking the Court to rewrite the Publishing Contract to incorporate an obligation on the part of the defendants to guarantee certain levels of profits, revenues, promotional activities, royalties and or business opportunities. The Publishing Contract contains no such obligations and to read them in based on extrinsic or parole evidence would violate the clear merger clause as set forth above Indeed, not only was there no guaranty of any particular results other than that the book would be published, but the Publishing Contract specifies that "Publisher shall have full discretion in final decisions relating to the production, publication and promotion of the Work." Id. Ex. A ¶3(c ). A motion to dismiss is properly granted, where, as here, a plaintiff seeks to read into the contract other additional terms that are inconsistent with or would vary the contract. (see *Five Star Electric Corp. v Metropolitan Transit Authority*, 210 AD3d 471, 471 [1st Dept. 2022]).[2]

## FRAUD

Defendants argue that the plaintiff's cause of action for fraud must be dismissed because it fails to plead fraud with the specificity required by CPLR §3016[b] and/or

---

[2] Even if there was a valid cause of action for failure to adequately promote the book project, any damages based on that alleged failure would be speculative and would amount to a claim for lost profits and/or lost business opportunities. To recover such damages in a breach of contract claim, a plaintiff must establish that such damages were caused by the breach, that the "particular damages were fairly within the contemplation of the parties to the contract at the time it was made" and that the alleged loss is "capable of proof with reasonable certainty" (*Kenford Co. v County of Erie*, 67 NY2d 257, 261 [1986]). The Publishing Contract fails to reflect that the parties contemplated lost profits as a potential basis for damages in the event of a breach.

because the fraud claim is duplicative of the breach of contract claim. The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages. ( *see Eurycleia Partners, LP v Seward & Kissel,* LLP, 12 NY3d 553, 559 [2009]; *Ross v Louise Wise Servs., Inc.,* 8 NY3d 478, 488, 836 N.Y.S.2d 509, 868 N.E.2d 189 [2007]). A claim rooted in fraud must be pleaded with the requisite particularity under CPLR 3016(b). Among other things, this requires that the complaint allege specific facts such that "a factfinder could reasonably infer the requisite knowledge or participation by the individual defendants' in the alleged fraudulent scheme." *Cronos Group Ltd. v. XComIP, LLC,* 156 AD3d 54, 61-62 [1st Dept. 2017]).

Here, the complaint contains allegations of fraud that are conclusory and/or speculative and the complaint does not plead any facts which would suggest that the defendants acted fraudulently (*see Bramex Assoc., Inc. v CBI Agencies, LTD.,* 149 AD2d 383 [1st Dept 1989] [mere conclusory allegations of fraud are insufficient under CPLR 3016(b)]). Moreover, the fraud counterclaim is duplicative of the breach of contract counterclaim. "The fraud alleged is based on the same facts as underlie the contract claim and is not collateral to the contract . . .," and all the damages can be remedied through the contract claim. (*J.E. Morgan Knitting Mills, Inc. v Reeves Bros.,* 243 AD2d 423 [1st Dept. 1997]; *MBIA Ins. Corp. v Credit Suisse Sec. (USA) LLC,* 165 AD3d 108, 115 [1st Dept. 2018] ("A party cannot bootstrap a fraud claim seeking duplicative relief merely by alleging a potential for punitive damages."). Indeed, "[t]he recovery of consequential damages naturally flowing from a fraud is limited to that which is necessary to restore a party to the position occupied before commission of the fraud." *Alpert v Shea Gould Climenko & Casey,* 160 AD2d 67, 71 [1st Dept. 1990]. To the extent that the plaintiff is alleging that the defendants made promises regarding the extent of their participation in the book project and never intended to fulfill those promises, such claims are also insufficiently pleaded. It is well-settled that general allegations claiming that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a] fraud claim. (*Cronos,* 156 AD3d at 71-72. Absent any allegation of any specific facts showing "that the defendant, at the time the promissory representation was made, never intended to honor or act on [its] statement," "dismissal of the fraud claim is required" on that ground. (*id.* at 71)

## BREACH OF FIDUICARY DUTY

Plaintiff's claim for breach of fiduciary duty is similarly deficient and/or duplicative of its breach of contract claim. To state a claim for breach of fiduciary duty the complaint must adequately allege that: "(1) defendant owed them a fiduciary duty, (2) defendant committed misconduct, and (3) [plaintiff] suffered damages caused by that misconduct." (*Burry v Madison Park Owner LLC,* 84 AD3d 699, 699-700 [1st Dept. 2011]. Plaintiff has not sufficiently alleged any of these elements. The complaint merely rehashes the same allegations concerning the defendants' alleged lack of intention to honor their contractual obligations under the Publishing Contract. These claims are both duplicative of the breach of contract claims and precluded by the merger clause as discussed above. The relationship between the parties was clearly a contractual one

653496/2022   MANGOLD MATE, LLC vs. METABOOK, INC. ET AL
Motion No.  001

Page 6 of 8

6 of 8

[* 6]

and not based upon any fiduciary relationship. [3]  Accordingly, the claims for breach of fiduciary duty are dismissed.

## DECLARATORY JUDGMENT

Finally, the complaint seeks a declaratory judgment declaring the defendants to be in breach of the Publishing Contract and declaring, in essence, that as a result of said breach, defendants have forfeited any subsidiary rights under the Publishing Contract and should be prohibited from taking any action to interfere with Oliver's plans to publish future books.  While the plaintiff styles this claim as one for declaratory relief, the defendants correctly point out that it is really a claim seeking recession of the Publishing Contract.  As detailed above, the Publishing Contract gives the defendants a five-year right of first refusal concerning any future works that Oliver wishes to publish during that time period.  Plaintiff wishes to be relieved of that obligation on the basis that defendants allegedly "breached the agreement by among other things, failing to make payments due under the contract, failing to provide information, failing to properly promote the book, failing to meaningfully consult with Plaintiff during the course of the project, [and] failing to timely register copyrights." Compl. ¶156.

Plaintiff's declaratory judgment claim, therefore, is, yet again, another recast claim based on Defendants' purported failure to perform under the contract, which recycles the identical allegations that Plaintiff asserted predicated its claims for breach of contract and fiduciary duty, and for fraud. There is nothing pled in the complaint which provides a basis for the plaintiff to be relieved of its obligations concerning the right of first refusal for Olivier's future projects.  Recission or reformation of a contract is a  remedy that is appropriate only under certain very narrow circumstances.  It is equitable relief that lies within the discretion of the court (*see Rudman v Cowles Communications*, 30 NY2d 1, 13 [1972]).  It should only be invoked when there is no other adequate remedy at law and the status quo can be substantially restored.  (*Id.* at 13-14).  Additionally, the right to rescind must be exercised promptly after the injured party learns of the wrong (*see New York Tel. Co. v Jamestown Tel. Corp.,* 282 NY 365, 372,  [1940]). Here, the claimed breaches of contract could, if they had been sufficiently pled, be remedied by monetary damages.  Furthermore, it would be impossible to return the parties to the previous status quo given that the defendants published and promoted Oliver's book pursuant to the Publishing Contract and that publication cannot be undone or rescinded.

Finally, a declaratory judgment claim that is essentially duplicative of a breach of contract claim should be dismissed (*see KNIC LLC v. New York City Economic Dev. Corp.,* 198 AD3d 481, 482 [1st Dept. 2021]. Plaintiff's request for a declaratory judgment declaring defendants to be in breach of the Publishing Contract is entirely duplicative of its breach of contract claim   The plaintiff is not entitled to declaratory relief based on any purported breach of obligations not specifically contained in the

---

[3] At oral argument, the Court inquired of plaintiff's counsel as to whether he was alleging any fiduciary relationship between the parties based on the fact that Oliver was a minor at the time he and his mother entered into the Publishing Contract.  Counsel agreed there was no fiduciary relationship on that basis.

653496/2022  MANGOLD MATE, LLC vs. METABOOK, INC. ET AL                           Page 7 of 8
Motion No.  001

Publishing Contract due to the clear and enforceable merger clause (*see Dubow v Century Realty, Inc.*, 172 AD3d 622 [1st Dept. 2019].

Accordingly, the motion to dismiss is granted and the complaint is dismissed. The Clerk is directed to enter judgment dismissing the complaint.

| | | | | | |
|---|---|---|---|---|---|
| **7/25/2024** | | | | | |
| **DATE** | | | | **NICHOLAS W. MOYNE, J.S.C.** | |
| CHECK ONE: | [X] CASE DISPOSED | | [ ] NON-FINAL DISPOSITION | | |
| | [X] GRANTED | [ ] DENIED | [ ] GRANTED IN PART | [ ] OTHER | |
| APPLICATION: | [ ] SETTLE ORDER | | [ ] SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | [ ] INCLUDES TRANSFER/REASSIGN | | [ ] FIDUCIARY APPOINTMENT | [ ] REFERENCE | |

**653496/2022   MANGOLD MATE, LLC vs. METABOOK, INC. ET AL**
**Motion No. 001**

Page 8 of 8